[Civ. No. 22153. Second Dist., Div. Two. Mar. 22, 1957.]

HORACE GARDNER et al., Respondents, v. CHARLES DELL RUBIN, Appellant.

Arnerich, Del Valle & Sinatra for Appellant.

Levy, Bernard & Jaffee and Samuel R. Tannenbaum for Respondents.

FOX, J.—Plaintiff brought this action to cancel a note and trust deed on the ground that there was fraud in the execution of these instruments. Judgment was rendered in favor of plaintiffs. Defendant Rubin, to whom these instruments had been transferred, appeals.

In seeking a reversal, appellant contends: (1) "The findings of the trial court that the plaintiff, Horace Gardner, was semi-illiterate; that he was not aware of the fact that he had signed a note and deed of trust; that his signature to said instrument was fraudulently secured and that he relied on the false representations made by defendants, are unsupported by the evidence and contrary to law"; and (2) "Plaintiffs were negligent in executing the note and deed of trust and the trial court erred in failing to so find."

This transaction contemplated the repair and improvement of plaintiffs' home which was owned by them as joint tenants. On May 5, 1954, defendant Richard Kritzer, who was secretary of the defendant United States Wrecking Corporation (herein referred to as the Corporation), and Garvin Foss, a sales representative of the Corporation, called on plaintiffs in their home for the purpose of working out such a transaction. As a result, a one-page contract was entered into which called for furnishing all labor and materials in making certain repairs to plaintiffs' home and further provided that plaintiffs were to be furnished $345 in cash to finish decorating their home.[1] The total amount of plaintiffs' obligation under the contract was $2,000. Monthly payments,

---

[1] The contract also provided that the Corporation would pay taxes on the property, "not to exceed $75.00." According to the president of the Corporation, this was done.

without specifying the amount thereof in the contract, were to be made "on or before the 5th day of every month." It was orally understood, however, that these payments would be $20 per month. Although work was to begin "within a week or so" none of it has even been started and plaintiffs did not receive any funds with which to decorate their house.

Plaintiffs also signed on this occasion a promissory note in favor of the Corporation for $2,000 payable in monthly installments of $20.00 per month beginning on June 5, 1954, and continuing until December 5, 1954, at which time the entire balance became due and payable. This note was secured by a trust deed on plaintiffs' property. The acknowledgment of plaintiffs' signatures on the trust deed was purportedly taken by Frances Davis, a notary public, who was an escrow officer for a mortgage company located at the same address as the Corporation and which shared offices with the Corporation. Plaintiffs, however, did not appear before the notary and the latter had no contact with them.

On May 21, 1954, the Corporation transferred the note and trust deed to appellant Rubin. Plaintiffs received notice on or about June 4, 1954, that their "trust deed and note for $2,000 in favor of" the Corporation had been sold to Mr. Rubin and advising where to make the payments. Not being aware that they had signed any such documents, plaintiffs became alarmed and Mrs. Gardner immediately consulted a lawyer. This action was filed on the 20th day of the following month.

Mr. and Mrs. Gardner are Negroes with little or no business experience beyond the acquisition of this property and the occasional purchase of furniture on the installment plan. At the time of this transaction, Mr. Gardner was 64 or 65 years of age and a sick man. Mrs. Gardner described his condition by saying, "My husband was not reliable, because he was suffering then with spinal meningitis;" that he "hadn't been out of the hospital two weeks;" and that "he almost lost his mind." She also stated, "My husband was feeling bad, and he went to sleep . . ." She referred to the time while she was discussing the deal with Kritzer and Foss. Mr. Gardner passed away on January 1, 1956, which was prior to the trial. His education was limited to "about the second grade," while Mrs. Gardner progressed to "around the seventh grade." She was not familiar with the nature of a promissory note or trust deed.

Reverend Aaron Watkins was at the Gardner home at the

time this transaction was taking form. While he was not present during the preliminary discussions between the parties, Mr. Gardner called him into the room and asked him to read the one-page contract (Exhibit 1) and tell him what he thought about it. Mrs. Gardner was called in too at this time. Reverend Watkins read the contract aloud to the Gardners. It had not been signed. The parties went over the improvements that were to be made and discussed certain of them, e.g., whether the interior was to be plastered or papered. Reverend Watkins thought that the deal was fine except that the contract did not state when the payments were to be made. Mrs. Gardner indicated she wanted to make the payments on the fifth of the month. This was agreeable to Kritzer. So, he interlined in handwriting the following: "Payments to be made on or before the 5th of every month." Reverend Watkins left "at that moment"; Kritzer "was still writing when" he left. The interlineation was initialed by the parties by reason of the fact that the contract was a printed form with the spaces filled in by typing. Reverend Watkins was not called upon to read any promissory note or deed of trust to the Gardners. He did not see any such documents there. In fact, there was no mention of a note or promissory note or deed of trust during the discussion of the transaction by the parties. Nothing was said to Mrs. Gardner about signing a note or trust deed. She signed some papers—the promissory note and deed of trust— without reading them. Kritzer told her these papers were "credit references" and Mrs. Gardner thought that was what they were. No one read either note or deed of trust to her. Had she known the character of these papers she would not have signed them. In explanation of her failure to read these documents Mrs. Gardner testified: "I just signed my name, because I was taking their word for it . . . they pretended that they were honest, and I thought they were honest." She added that she was nervous; that she was cooking and her food was burning; that there was a Bible class she wanted to go to; and that "I thought it was an honest concern."

Kritzer testified he explained to the Gardners what a deed of trust was, the due date of the note, the amount of payments and the date payable. He further testified that Reverend Watkins read the contract, note and trust deed, and that in response to the Gardners' inquiry whether everything was all right, he replied, "Certainly." He also stated that neither

the Gardners nor Reverend Watkins asked him any questions about the instruments.

Appellant gave testimony indicating he was a holder in due course, and the court so found; but the court also found that he was not entitled to any relief "due to the fact that there was fraud in the execution of said note and deed of trust." This is based on the principle that where one is fraudulently induced to sign a negotiable instrument believing it to be a different type of document such instrument is not enforceable even by a holder in due course in the absence of negligence on the part of the maker. (*C.I.T. Corp.* v. *Panac,* 25 Cal.2d 547, 550 [154 P.2d 710, 160 A.L.R. 1285].)

The pertinent findings with respect to fraud in the execution of the note and trust deed are quoted below.[2]

In passing on appellant's contention that the findings are lacking in evidentiary support, the following principles must be observed: "When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact. [Citations.] When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]" (*Primm* v. *Primm,* 46 Cal.2d 690, 693-694 [299 P.2d 231].) Thus we must "view the evidence in the light most favorable to the respondent (*Estate of Isenberg,* 63 Cal.App.2d 214, 216 [146 P.2d 424]), and bear in mind that it is the function of the trial court to pass on the credibility of the witnesses and determine the weight to which their testimony is entitled.

 Applying these principles, it is clear there is ample evidence to support the challenged findings. It should be noted at this point that appellant does not question the

---

[2]"VIII: The court further finds that it is true that the plaintiffs, considering their mentality and lack of education, were not aware of the fact that they had signed a note and deed of trust, and the court further finds that their signature to said documents was secured by fraud in the execution thereof exercised by the defendants U. S. WRECKING CORPORATION and RICHARD KRITZER."

"XI: The court further finds as true that the plaintiffs at the time they executed the said deed of trust and note were not aware they were signing a deed of trust and note, but were under the impression that they were signing an application for credit, and their signatures to said document were secured fraudulently by the defendants."

sufficiency of the evidence to support the findings that fraud in the execution of the note and trust deed was practiced on Mrs. Gardner. He does contend, however, that the evidence does not establish that Mr. Gardner was so imposed upon. Unfortunately, Mr. Gardner was not available to tell his side of the story since he had passed on before the trial. It is obvious that his second-grade education and lack of business experience ill equipped him to determine whether the contract Kritzer and Foss had prepared correctly reflected the deal they had made for the repair of the Gardner home. Gardner recognized his limitations so he asked Reverend Watkins to join the group, read the contract and tell him what he thought about it. After discussing the transaction, Reverend Watkins advised Gardner it was fine provided the contract stated when the payments were to be made. Kritzer immediately made an appropriate interlineation to cover this matter. Kritzer knew Gardner was relying on Reverend Watkins to advise him whether the contract accurately and completely covered their agreement. Yet, according to Watkins' testimony, which the court accepted as true, he was not called upon to read to the Gardners any promissory note or trust deed; neither did he see any such documents there. Nor was any mention made of either a note or trust deed during the discussion of the transaction. The inference is therefore unmistakable that Kritzer was fraudulently attempting to conceal the fact that a promissory note secured by a trust deed on the Gardner home was a part of the deal. In pursuance of this scheme, Kritzer requested Mrs. Gardner to sign some papers for credit reference purposes. Believing he and his concern were honest she signed these documents without reading them.[3] Mrs. Gardner was thus fraudulently induced to sign the promissory note and trust deed here in controversy. This lends support to the inference that Kritzer was attempting to conceal the character of these documents. This being so, it is a reasonable inference that he pursued the same policy with respect to Mr. Gardner, else his scheme undoubtedly would have failed. As the parties were together when the final form of contract was being considered, and since Kritzer could reasonably anticipate that Mr. and Mrs. Gardner would recount and discuss what had been said by him, and since any conflicts in his statements to them would create undesirable suspicion that might tend to frustrate the

[3] Reverend Watkins apparently had left the Gardner home before this.

deal, it is a reasonable inference that Kritzer made the same misrepresentation to Mr. Gardner that he made to Mrs. Gardner, viz., that the papers he was requested to and did sign were credit references rather than a promissory note and trust deed on their property. In view of Reverend Watkins' examination of the contract (Exhibit 1), which presumably was the only document involved in the transaction, and his report that the deal was "fine" with the addition of the time when the payments were to be made, and Kritzer's immediate acceptance of this suggestion, it is a reasonable inference that Mr. Gardner relied on the latter's representation that the papers were credit references.

· In the evaluation of this transaction the fact that Mr. and Mrs. Gardner admittedly did not appear before a notary public to acknowledge their signatures to the trust deed is not without significance. Such illegal acknowledgment was undoubtedly arranged by Kritzer since the notary was employed by a mortgage company that shared offices with the defendant corporation, of which Kritzer was secretary.

While the court did not expressly find, as appellant intimates, that Mr. Gardner "was semi-illiterate," perhaps such finding may be implied in the findings the court did make. (See footnote 2.) If so, an inference in support of such a finding may readily be drawn from the fact that he had about a second-grade education, practically no business experience, and called Reverend Watkins in to read and explain the written contract Kritzer had prepared. While it appears that Mr. Gardner could sign his name, it does not appear that he could read.

From the foregoing it is clear that the challenged findings are amply supported by the evidence and the inferences reasonably deducible therefrom.

Implicit in the court's finding that appellant was not entitled to any relief although he was a holder in due course of the note, is the further finding that plaintiffs were not negligent in executing the note and trust deed (*C.I.T. Corp.* v. *Panac,* 25 Cal.2d 547, 548-552 [154 P.2d 710, 160 A.L.R. 1285]). Appellant contends plaintiffs were negligent as a matter of law. We cannot agree.

"Whether or not failure to read a document is such negligence as to preclude relief is ordinarily a question of fact, and this is particularly true where. the failure to read is induced by reliance on the misrepresentation of the other party or of his agent [citations]." (*Wright* v. *Lowe,* 140

Cal.App.2d 891, 897 [296 P.2d 34].) And in passing on that question the trier of fact may take into consideration "the age and mental and physical condition of the person signing" (*C.I.T. Corp.* v. *Panac, supra,* p. 559).

Plaintiffs had taken reasonable precautions to see that the contract truly reflected their agreement by asking Reverend Watkins to read and explain it. This he had done indicating it was satisfactory with the addition of a provision as to when the payments were to be made, to which Kritzer readily agreed and proceeded to add in handwriting, at which time Reverend Watkins left the Gardner home. He had not been told that a note and trust deed were involved. He was not present when these papers were presented to the Gardners for their signature. So the plaintiffs did not have anyone to consult as to the character of these documents. It is a reasonable inference that Mr. Gardner could neither read nor understand these papers in view of his limited education, business experience and physical condition. While Mrs. Gardner could read, she was wholly unfamiliar with the nature of a promissory note or trust deed. Kritzer pretended to be honest and she thought he was, so she took his word for it and signed the papers as requested. True, her food was burning, and she was anxious to attend her Bible class, but she nevertheless signed because she thought she could safely rely on Kritzer's representations. And this was not without reason. Reverend Watkins had looked over the contract and had said the deal was fine with one addition, which Kritzer promptly proceeded to insert. Also, Kritzer had been most accommodating in agreeing to use paper rather than plaster in certain portions of the interior, and in agreeing to the amount, and time for making the monthly payments, to meet plaintiffs' convenience. This all naturally served to establish confidence. Nothing had been said about a note and trust deed. Reverend Watkins was no longer present. Under these circumstances it cannot be said, as a matter of law, that plaintiffs were negligent in signing the note and trust deed.

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.