**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**Len STECKLER, Defendant.**

**No. 85 Civ. 6939 (LLS).**

United States District Court, S.D. New York.

March 27, 1987.

D'Amato & Lynch, New York City, for plaintiff; Richard F. Russell, Stephen J. McCahey, of counsel.

Kornstein Veisz & Wexler, New York City, for defendant; Daniel J. Kornstein, Lourdes Wan, of counsel.

## OPINION AND ORDER

STANTON, District Judge.

This is one of over 200 cases presently before this Court in which plaintiff National Union Fire Insurance Company of Pittsburgh ("National Union"), an issuer of financial guarantee bonds, is suing to enforce an indemnity agreement between itself and a limited partner in one of scores of tax-shelter partnerships in various parts of the country, and also to enforce its rights as subrogee of promissory notes which it honored on his behalf. National Union had guaranteed, to those who advanced funds to the partnership enterprise, that the limited partner would make all of his capital contributions represented by his promissory notes to the partnership. When the money ran out, or the venture faltered, the limited partner stopped making his required contributions, and National Union had to make them on his behalf. Now it sues the defaulting limited partner for reimbursement, under an indemnity agreement he gave National Union at the time it guaranteed his payments, and as subrogee on the notes on which he defaulted.

The defendant limited partner, here Len Steckler, moves to dismiss the action for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), or to transfer it to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). Plaintiff National Union moves for summary judgment. Defendant's motion to transfer is granted. Plaintiff's motion for summary judgment is denied.

### FACTS

National Union is a Pennsylvania corporation with its principal place of business in New York City. Mr. Steckler, a film producer, is a California resident.

According to the defendant, in December 1983 he purchased a limited partnership interest in Flowind Partners I ("Flowind"), a California limited partnership with offices in Pleasanton, California, through his California stockbroker, Mr. Ritt Berry. Flowind planned to build windmills in Southern California to generate energy for sale to an electric company. Steckler Aff. sworn to Dec. 24, 1985, ¶ 7 ("Steckler Aff. I"). Mr. Berry suggested the Flowind investment to Mr. Steckler and represented that he could invest $7,750 in the limited partnership, for which Mr. Steckler then wrote a check. Mr. Berry handed Mr. Steckler a "voluminous pile of documents, consisting of what looked to be several hundreds of pages, and asked for my signature on numerous documents." Steckler Aff. I, ¶ 8. "[R]elying on Mr. Berry's judgment and trustworthiness", Mr. Steckler signed approximately 10–15 documents, some apparently in triplicate, without reading them. *Ibid.* The transaction lasted about twenty minutes. Steckler Aff. I, ¶ 10. Among the executed documents was a promissory note payable to Flowind for $42,250, payable in installments of $13,000, $16,500 and $12,750 on March 1, 1984, March 1, 1985, and March 1, 1986, respectively. Nonetheless, Mr. Steckler has declared under oath that his broker "explicitly told me that my investment was limited to the $7,750 I paid him that day, and no further monies were required" (Steckler Aff. sworn to March 12, 1986, ¶ 8 ("Steckler Aff. II")) and that his signature on the promissory note was obtained through

fraud. Steckler Aff. II, ¶ 9. The promissory note contained a clause stating that it was to be governed by California law.

Mr. Steckler's promissory note, and those of other investors in Flowind, were negotiated and endorsed to Seattle First National Bank ("SFN") to secure a loan that SFN would provide to Flowind. As additional security for the loan, SFN required that each limited partner obtain a bond guaranteeing his payment of all of his promissory notes.

National Union required Mr. Steckler, and the other limited partners whose notes it guaranteed, to execute indemnification and pledge agreements ("indemnity agreement") in National Union's favor. Mr. Steckler executed the indemnity agreement when he signed the promissory note in his broker's office. Under the indemnity agreement he (1) agreed to indemnify National Union against any liability, loss, or expenses (including attorneys' fees) resulting from payments made by National Union under the bond, (2) agreed to reimburse National Union for amounts paid by it in the event of a default by Mr. Steckler, plus interest, and (3) pledged his interest in Flowind as security for his obligations under the indemnity agreement.

The indemnity agreement included a choice-of-law clause and a permissive forum-selection clause:

> The Undersigned hereby agrees that the Application and this Indemnification and Pledge Agreement shall be deemed to have been executed in the State of New York, and the rights and liabilities of the parties hereto shall be determined in accordance with the laws of the State of New York. Any action or proceeding of any kind against the Undersigned arising out of or by reason of this Indemnification and Pledge agreement may be brought in any state or federal court of competent jurisdiction in any County in the State of New York, in addition to any other court in which such action might properly be brought.

On or about December 28, 1983, National Union issued the bond in favor of SFN.

On March 8, 1984, Mr. Steckler received a bill from Flowind for $13,000. He contacted Mr. Berry, who denied having told him that he would not have to make more than the initial $7,750 investment. Steckler Aff. I, ¶ 12. Mr. Berry advised him to ignore the bill. *Ibid.* Mr. Steckler spoke to his accountant, Mr. Feldstein, who "explained to me some of the legal ramifications which might occur." Steckler Aff. I, ¶ 13. "With great hesitation and reluctance", Mr. Steckler then paid the $13,000. *Ibid.*

In March 1985, Mr. Steckler received a bill for $16,500 from Flowind. Mr. Steckler's attorney, Mr. Segilman, advised him to call Mr. Rose, a Flowind vice president. Steckler Aff. I, ¶ 14. Mr. Rose advised Mr. Steckler to try to sell his shares through Dagmar Kossack in New York City. Ms. Kossack is a Claims Examiner for National Union, although Mr. Steckler apparently was unaware of it at the time. Mr. Steckler spoke to Ms. Kossack, who advised him that she would sell his shares. Steckler Aff. I, ¶ 17. (Ms. Kossack disputes this in her affidavit.) He then thought that the matter was settled. On May 22, 1985, pursuant to the terms of the bond, National Union paid $16,500 to SFN.

On August 27, 1985, National Union commenced this action against Mr. Steckler in the Southern District of New York for the $16,500 installment due on March 1, 1985, plus collection expenses and interest. Mr. Steckler received a copy of the summons and complaint in October, 1985.

## DISCUSSION

Parties to a contract may agree in advance to submit to the jurisdiction of a given court. *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *M. Lowenstein & Sons, Inc. v. Austin,* 430 F.Supp. 844, 845 (S.D.N.Y.1977). Mandatory forum-selection clauses will be enforced unless it clearly appears that enforcement " 'would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.' " *Bense v. Interstate Battery System of America, Inc.,* 683 F.2d

718, 721 (2d Cir.1982) (mandatory forum-selection clause) (quoting *The Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916).

Defendant contends that the permissive forum-selection clause in the indemnity agreement should be set aside because it violates the test set out in *Bense* and *The Bremen.* One need not go so far here, however, for the clause in this case is merely permissive and does not prevent a change of venue under § 1404(a). *See Credit Alliance Corp. v. Crook,* 567 F.Supp. 1462, 1464–65 (S.D.N.Y.1983); *Coface v. Optique Du Monde, Ltd.,* 521 F.Supp. 500 (S.D.N.Y.1980). The indemnity agreement did not establish New York as the exclusive forum for litigation, but rather as a permissible forum, leaving the action subject to transfer depending upon the factors applicable to decisions under § 1404(a).

Section 1404(a) provides that a district court may transfer any civil action to any other district where the action might have been brought, "[f]or the convenience of parties and witnesses, [and] in the interest of justice". The threshold question is whether, as required by § 1404(a), the action could have been brought in the transferee forum in the first place. *See In re Air Crash Disaster at John F. Kennedy International Airport,* 479 F.Supp. 1118, 1123 (E.D.N.Y.1978). Mr. Steckler is a California resident. National Union sues for over $10,000. Thus, since citizenship is diverse, there is federal subject matter jurisdiction, 28 U.S.C. § 1332(a)(1), and venue in the Central District of California where Mr. Steckler resides would be proper under 28 U.S.C. § 1391(a).

Defendant as movant bears the burden of establishing the propriety of a transfer. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978). The pertinent factors are:

> (1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where

the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

*Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967).

Defendant contends that a California forum would be appreciably more convenient because all material events took place in California, material witnesses reside in California and cannot be compelled to testify in New York, documents concerning the California Flowind Limited Partnership are in California, and the case can be tried more expeditiously and inexpensively in California.

In opposition, plaintiff argues that a transfer should be denied because of the inconvenience to its witnesses, the necessity of incurring additional expenses, the presence of all dispositive documents before the court, and the further delay of proceedings if the case is transferred to California.

The plaintiff's choice of forum is entitled to considerable weight, and absent a clear and convincing showing that the balance of convenience favors a transfer, plaintiff's choice should normally prevail. *Ayers v. Arabian American Oil Co.,* 571 F.Supp. 707, 709 (S.D.N.Y.1983). However, that choice is given less weight where the case's operative facts have little or no connection with the transferor forum. *See Uddyback v. New Jersey Transit Rail Operations,* 629 F.Supp. 1173 (S.D.N.Y.1986); *Mobile Video Services, Ltd. v. National Assoc. of Broadcast Employees and Technicians, AFL–CIO,* 574 F.Supp. 668, 671 (S.D.N.Y. 1983); *Troyer v. Karcagi,* 488 F.Supp. 1200, 1207 (S.D.N.Y.1980).

Most of the significant actions involved in this suit occurred in the Central District of California. Two of the principal actors, defendant Mr. Steckler and his broker Mr. Berry, reside there. The alleged oral misrepresentations took place there. Mr. Steckler signed and executed the promissory note (governed by California Law), sub-

scription agreement, indemnity agreement (governed by New York law) and other related documents in Mr. Berry's office in California. The fact that New York is plaintiff's principal place of business has little to do with the dispute. There is no question that the documents were executed, and they can readily be produced in California. No operative act took place in New York. The only personal activity involving New York, as far as it appears, was a telephone conversation between Mr. Steckler and Ms. Kossack during which there was a misunderstanding about how to get out of the investment.

Mr. Steckler, a California resident, will naturally find it more convenient and less expensive to litigate this action in California. National Union does business in many states, including California, and it "should expect that the use of a permissive forum selection clause may result in distant litigation where—as here—the opposing part[y] would be greatly inconvenienced by litigation in New York." *See, e.g., Leasing Service Corporation v. Roy Rigdon and Virgil Taylor*, No. 85–1718, slip op. at 7 (S.D. N.Y. January 14, 1987) [Available on WESTLAW, DCT database]; *Leasing Service Corp. v. Patterson Enterprises, Ltd.*, 633 F.Supp. 282, 285 (S.D.N.Y.1986). Plaintiff should be prepared to litigate where it transacts its business.

Mr. Steckler intends to raise the defense of fraud in the execution of the promissory note, which under Cal.Comm.Code § 3305(2)(c)[1], can be asserted against a holder in due course of the note, such as SFN, or its subrogee, here National Union. Such a defense involves questions of fact to be determined from all the circumstances in accordance with California law. *See, e.g., C.I.T. Corporation v. Panac*, 25 Cal.2d 547, 154 P.2d 710 (1944); *Gardner v. Rubin*, 149 Cal.App.2d 368, 308 P.2d 892 (1957). Mr. Steckler also plans to raise the

defenses of fraud in the factum and in the inducement concerning his execution of the indemnity agreement, which are also defenses dependent on the factual circumstances. *See Mix v. Neff*, 99 A.D.2d 180, 182–83, 473 N.Y.S.2d 31 (N.Y.App.Div. 1984). Mr. Berry's testimony appears to be essential with respect to these defenses. There is no indication that Mr. Berry would voluntarily attend a trial in New York, and he is beyond this court's subpoena power. With a basic issue so sharply drawn, the live testimony of material witnesses is desirable. *See, e.g., Teachers Ins. & Annuity Association of America v. Butler*, 592 F.Supp. 1097, 1106 (S.D.N.Y.1984) (citing cases); *Vaughn v. American Basketball Ass'n*, 419 F.Supp. 1274, 1276–77 (S.D.N.Y. 1976). Other material witnesses of Mr. Steckler are beyond this court's subpoena power. The convenience of witnesses tips the scale decisively towards California as the more appropriate forum.

Plaintiff responds that the Southern District is more convenient because "National Union's witnesses, who could testify (if arguable defenses to the Note or Indemnity Agreement are ever asserted) to any discussions with defendant and the negotiation of the notes, would best be served by continuing this action in New York." Memorandum of Law in Opposition to Defendant's Motion at 20–21. Plaintiff did not, however, specify any of its witnesses whose testimony would be necessary. *Cf. Factors*, 579 F.2d at 218 (requiring such information from movant under § 1404(a)); *Computer Assistance, Inc. v. Morris*, 564 F.Supp. 1054, 1057 (D.Conn.1983) (same). Where a plaintiff's chosen forum has so little relation to the material facts of the case that he may not rely on the deference ordinarily given his choice, he cannot by conclusory recitations of inconvenience defeat a transfer motion which is supported by a factual showing of greater conve-

---

1. § 3305. Rights of a Holder in Due Course. To the extent that a holder is a hoider in due course he takes the instrument free from

   \*     \*     \*     \*     \*     \*

(2) All defenses of any party to the instrument with whom the holder has not dealt except

\*     \*     \*     \*     \*     \*

(c) Such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms;

\*     \*     \*     \*     \*     \*

nience in the transferee forum. *See Anchor Savings Bank v. Transamerica Ins. Co.*, 634 F.Supp. 398 (S.D.N.Y.1986); *Ross v. Colorado Outward Bound School, Inc.*, 603 F.Supp. 306, 310 n. 5 (W.D.N.Y.1985); *Mims v. Proctor and Gamble Distributing Co.*, 257 F.Supp. 648, 656 (D.S.C.1966) (once defendant makes prima facie showing for transfer burden shifts to plaintiff).

National Union's motion for summary judgment is denied since there are unresolved material issues of fact concerning fraud in the signing of the promissory note and indemnity agreement.

Accordingly, the Clerk of the Court is directed to transfer this action to the United States District Court for the Central District of California.

So Ordered.