[No. B122159. Second Dist., Div. Seven. Apr. 27, 1999.]

ANNIE LOUISE JONES, Plaintiff and Respondent, v.
ADAMS FINANCIAL SERVICES et al., Defendants and Appellants.

**COUNSEL**

Law Offices of Steven Gourley, Steven Gourley and David M. Gillen for Defendants and Appellants.

Bet Tzedek Legal Services, Manuel Duran and Benjamin Diehl for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—This is an appeal from the trial court's order denying a petition to compel arbitration in an action to cancel a note and deed of trust based on fraud in the execution. Appellants also contend the trial court erred in refusing their request for a statement of decision. We affirm the trial court's rulings.

### FACTS AND PROCEEDINGS BELOW

Plaintiff Annie Louise Jones brought this action against several defendants, including Adams Financial Services, a loan broker, its president Antonio Santillan, and the Schiff Family Revocable Trust and its trustees who made the loan which is the subject to this action. We state the facts in the light most favorable to the trial court's order.

Plaintiff Annie Louise Jones is a 79-year-old woman who at all times material to this case was legally blind and suffered from dementia and hypothyroidism. Her income consists of Social Security benefits and a small pension totaling $819 a month.

In April 1996, Ms. Jones received an unsolicited visit at her home from a woman named Mary Johnson. Johnson told Ms. Jones she "helped senior citizens get reverse mortgages." Ms. Jones told Johnson she did not want a "reverse" mortgage or any other type of mortgage. Nevertheless Johnson

continued to call on Ms. Jones over the next few weeks, bringing her fruit, and discussing subjects other than the mortgage. Gradually Johnson gained Ms. Jones's trust and friendship. In the course of these visits Johnson saw that Ms. Jones could not read without the aid of a magnifying glass.

In late April or early May of 1996, Johnson convinced Ms. Jones to accompany her to the office of defendant Adams Financial Services just to "talk to someone about reverse mortgages." Ms. Jones continued to insist she was not interested in a mortgage.

At Adams Financial Services Johnson introduced Ms. Jones to defendant Miguel Santillan, who told her he was going to help her get a reverse mortgage. Ms. Jones repeated what she had told Johnson: she was not interested in a "reverse" mortgage or any kind of mortgage. Nevertheless, Santillan produced "a lot of papers" and asked Ms. Jones to initial them. Ms. Jones did not have her magnifying glass with her and could not read the papers Santillan gave her. All she could see were "blurry lines." She asked what the papers were and Johnson told her they were just for the purpose of finding out what the payoff was on her current mortgage. Trusting Johnson, Ms. Jones placed her initials where Santillan and Johnson told her to. She does not remember placing her signature on any of the papers but remembers "initialing a lot."

Approximately a month later, Miguel Santillan and his father, defendant Antonio Santillan, came to Ms. Jones's house demanding payment on the loan she had received and threatening to foreclose on her home if she didn't pay. Ms. Jones told them she never took a loan from them. According to defendants, however, in May 1996 Ms. Jones, took out a $50,000 loan secured by a deed of trust on her home. The record shows this loan was for five years at an interest rate of 12.75 percent. The payments were $531.25 per month, interest only, with a balloon payment of $50,531 due on July 1, 2001. For arranging this loan, Ms. Jones paid Adams Financial Services a $6,000 commission and paid Mary Johnson a $2,000 commission.[1]

When Ms. Jones's niece, Phyllis Tisdale, heard about the pending fore-closure on her aunt's home she went to Adams Financial Services and asked Antonio and Miguel Santillan "how they could have made a loan to [Ms. Jones] when she could not see properly and was mentally impaired." Miguel Santillan responded, "All we did was move her hand to show her where to sign and initial."

---

[1]According to Ms. Jones's verified complaint she never received any of the proceeds from this loan. Instead, Adams Financial Services gave Johnson a check representing the loan proceeds whereupon Johnson forged Ms. Jones's signature and deposited the check in her own bank account.

Subsequently, the trustee on the deed of trust allegedly signed by Ms. Jones recorded a notice of default and notice of trustee's sale. Legal Aid attorneys representing Ms. Jones filed this action to cancel the note and deed of trust and obtained a preliminary injunction against the foreclosure sale.

Defendants petitioned for an order compelling arbitration on the ground that in the process of applying for the loan Ms. Jones contractually agreed to submit all disputes arising out of or relating to the loan to binding arbitration. Ms. Jones opposed the petition on the ground she was defrauded into executing the loan documents including the arbitration agreement.

After reading and considering the parties' declarations, which conflict in some material respects, the trial court found Ms. Jones had "adequately carried" her burden of showing fraud in the execution of the loan documents and denied the defendants' petition to compel arbitration. Defendants subsequently moved for a statement of decision which the trial court denied as untimely. Defendants filed an appeal from the order denying their petition to compel arbitration. (Code Civ. Proc., § 1294, subd. (a).)

## DISCUSSION

### I. *Substantial Evidence Supports Denial of the Petition to Compel Arbitration.*

■ Where " ' "the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is void. . . ." ' . . . [¶] . . . [¶] . . . [C]laims of fraud in the execution of the entire agreement are not arbitrable under either state or federal law." (*Rosenthal* v. *Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415, 416 [58 Cal.Rptr.2d 875, 926 P.2d 1061], italics omitted.)

■ Ms. Jones contends defendants tricked her into signing the loan documents by telling her she was merely authorizing them to obtain the payoff on her existing mortgage. Defendants contend the evidence is insufficient to prove fraud in the execution and thereby defeat defendants' petition to compel arbitration.

Although the declarations submitted by the parties contain sharp conflicts as to the circumstances surrounding Ms. Jones's execution of the loan documents, nevertheless, defendants do not seek reversal on the ground the trial court abused its discretion in failing to take oral testimony and to

subject the witnesses to cross-examination. (Cf. *Rosenthal* v. *Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 414.) Instead, defendants argue that even if the declarations on behalf of Ms. Jones are taken at face value she has failed to prove by a preponderance of the evidence the loan documents are void for fraud in their execution.

Defendants contend it was Mary Johnson, not they, who misrepresented the nature of the documents Ms. Jones signed. And, because there is no evidence Johnson was an agent of defendants, they cannot be held liable for her conduct.

Ms. Jones's declaration states in relevant part: "One of the times Mary Johnson took me to Adams Financial Services, I met a man named Miguel Santillan. He told me that he was going to help me get a reverse mortgage. I told him that I did not want to get a reverse mortgage or any mortgage.

"Miguel Santillan did not listen to me. He brought out a lot of papers. He wanted me to initial many papers. I asked what the documents were because I could not read the papers. Mary Johnson said that they were needed to get the payoff of the 'Home Budget loan.' I trusted Mary Johnson so I initialed where they told me to initial." In addition, Phyllis Tisdale stated in her declaration Miguel Santillan admitted he and Johnson moved Ms. Jones's hand on the documents to show her where to sign and initial.

It is undisputed Miguel Santillan was a loan officer employed by Adams Financial Services and that he was acting as an agent of Adams Financial Services in processing the subject loan. The trial court could draw a reasonable inference from the Jones and Tisdale declarations that Miguel Santillan was present when Johnson falsely told Ms. Jones the loan documents were merely papers necessary to obtain the payoff on her current mortgage and, further, that he not only did nothing to correct this false statement but actually assisted Johnson in placing Ms. Jones's signature on the documents. Therefore, the court could find defendants' agent, Miguel Santillan, participated in the fraudulent execution of the documents.

Defendants next argue Ms. Jones is not strictly entitled to void the loan contract for fraud in the execution even if defendants did misrepresent the nature of the documents she was signing.  ▪  The rule in California, as clarified by the Supreme Court in *Rosenthal,* is that fraud in the execution does not render a written contract void where the defrauded party has a reasonable opportunity to discover the real terms of the contract before signing it. (14 Cal.4th at pp. 419-420, 423.) Therefore, "one party's *unreasonable* reliance on the other's misrepresentations, resulting in a failure to

read a written agreement before signing it, is an insufficient basis under the doctrine of fraud in the execution, for permitting that party to avoid an arbitration agreement contained in the contract." (*Id.* at p. 423, italics in original.)

A party does not have "a reasonable opportunity" to discover the true nature of the writing if the party is prevented from doing so by some physical or other impairment. In *Rosenthal*, for example, two plaintiffs declared they were unable to read the documents presented to them because they knew very little English and one declared she could not read the documents because she was legally blind. The court held these facts, assuming they were true, deprived the plaintiffs "of a reasonable opportunity to learn the character and essential terms of the documents they signed" and "would suffice to establish reasonable reliance for purposes of showing fraud in the execution of the agreement." (14 Cal.4th at pp. 428, 429.)

Ms. Jones's declaration states she could not read the documents presented to her for her signature because she did not have her magnifying glass with her. Other declarations submitted on her behalf show she was legally blind[2] and suffered from "dementia of the Alzheimer's type . . . of sufficient magnitude to compromise her ability to handle her own financial affairs." The present case is factually similar to *Gardner* v. *Rubin* (1957) 149 Cal.App.2d 368 [308 P.2d 892] and to *Rosenthal* v. *Great Western Fin. Securities Corp., supra,* 14 Cal.4th 394.

In *Gardner*, an elderly couple successfully brought an action to cancel a note and trust deed on the ground of fraud in the execution of these instruments. The plaintiffs were told the documents they were signing were "credit references" and the plaintiffs believed this was true. (149 Cal.App.2d at p. 371.) In rejecting the defendant's argument the plaintiffs were negligent in not reading the documents before they signed them, the Court of Appeal held it was reasonable for the trial court to infer from the evidence "that Mr. Gardner could neither read nor understand these papers in view of his limited education, business experience and physical condition. While Mrs. Gardner could read, she was wholly unfamiliar with the nature of a promissory note or trust deed." (*Id.* at p. 375.) The court also noted at the time the Gardners signed the note and deed of trust, they were alone with the loan agent "[s]o the plaintiffs did not have anyone to consult as to the character of these documents." (*Ibid.*)

Like Mr. Gardner, Ms. Jones suffered from physical and mental impairments which prevented her from reading the documents, and like the

---

[2]Ms. Jones has an unaided visual acuity of 20/200 in both eyes, which constitutes legal blindness. (*California School Employees Assn.* v. *Department of Motor Vehicles* (1988) 203 Cal.App.3d 634, 638, fn. 2 [250 Cal.Rptr. 50].)

Gardners, Ms. Jones was alone with the loan agents when she signed the documents she believed were simply payoff inquiries. It could be argued that, unlike Ms. Gardner, Ms. Jones was familiar with the nature of a promissory note and trust deed since she already had a mortgage on her home. But this knowledge, assuming she had it, was useless if she could not see the documents well enough to determine their true nature. Furthermore, Ms. Jones's home was purchased when her husband was still alive so it cannot be presumed Ms. Jones herself had any familiarity with promissory notes and deeds of trust.

In *Rosenthal,* plaintiff Rosen submitted a declaration stating she was legally blind and this fact was known to the defendant's agent, Ferlini, when he falsely represented to her she was merely signing a "signature card" for an FDIC-insured deposit account at Great Western Bank. In fact Rosen signed documents investing her money in an uninsured mutual fund operated by a separate entity, Great Western Financial Securities Corporation. Because Rosen could not read the documents, the agent guided her hand to the places where he wanted her to sign including an arbitration clause. Ms. Rosen's sister joined her while she was signing the documents and the agent told the sister Ms. Rosen was just signing a signature card to open a new account. (14 Cal.4th at p. 429.) The Supreme Court held: "In light of Rosen's prior relationship with [Great Western Bank], by whom she thought Ferlini was employed, her warnings to Ferlini that she could not read the documents, [and] Ferlini's assurances . . . [she] was only signing a 'signature card,' Rosen's failure to take additional steps to learn the contents of the written agreement would not have been negligent. [Defendant's] asserted fraud would have deprived her of a reasonable opportunity to learn the character and essential terms of the documents she signed." (*Ibid.*)

Like Ms. Rosen, Ms. Jones was legally blind when she signed the documents, and this fact was known to Miguel Santillan, who guided her hand to the places where she was to sign. Although the court mentioned Ms. Rosen's prior relationship with Great Western Bank was a factor in her reliance on the truth of the statements of the representative from Great Western Financial, we do not believe a prior relationship with the defendant is necessary to establish reasonable reliance on the defendant's representations. In *Gardner*, for example, the transaction was completed in one evening and there was no prior relationship between the Gardners and the loan agent. (149 Cal.App.2d at pp. 369-370.)

Defendants argue that notwithstanding Ms. Jones's physical impairments her reliance on the misrepresentations by Miguel Santillan was unreasonable because, even if she could not read or understand the documents when she

signed them, she was given copies of the documents to take home with her and she had three business days after executing the documents in which to cancel the contract.[3] She could have read the documents with her magnifying glass when she got home or had someone explain them to her. Her negligence in failing to do so precludes a finding the contract is void for fraud in the execution.

We disagree with defendant's contention Ms. Jones acted negligently. As the court in *Rosenthal* recognized, a party must have "a reasonable opportunity" to discover the real terms of the contract *"before signing it."* (14 Cal.4th at p. 423, italics added.) Once the party signs the contract as a result of the defendant's fraud the transaction is complete and the cause of action for cancellation arises. Defendants do not explain why Ms. Jones should be required to have discovered defendants' fraud within the three-day cancellation period under regulation Z. (See fn. 3, *ante.*) We note the purpose of the three-day "cooling off" period is to give the consumer the opportunity to reconsider and cancel a transaction which involves encumbering the title to her home. (*Rodash* v. *AIB Mortg. Co.* (11th Cir. 1994) 16 F.3d 1142, 1145.) If, as the trial court found, Ms. Jones did not know she had entered into a transaction encumbering the title to her home she would have no reason to be concerned about her right to cancel the transaction and no particular reason to read the documents she was given once she returned home. Only an unexpected event such as the Santillans' arriving on her doorstep demanding a loan payment would prompt her to investigate whether the documents she signed were in fact what the defendants represented them to be.

Finally, defendants argue Ms. Jones's claims of physical and mental impairment are not believable. They point to Ms. Tisdale's declaration in support of a preliminary injunction in which she states Ms. Jones *left* eye was impaired by a cataract. Presumably, defendants state, Ms. Jones could have read the documents with her *right* eye. Defendants also question how a woman who was so mentally impaired she could not understand the nature of the contract she was entering into could, two years later, file a verified complaint and declaration under penalty of perjury swearing she could competently testify under oath to the facts alleged therein.

As an appellate court, we do not review the evidence for its "believability." (*Gardner* v. *Rubin, supra*, 149 Cal.App.2d at p. 372.) Questions of credibility are for the trial court. Nevertheless we note Ms. Jones's eye surgeon filed a declaration stating at all times relevant to this action her

---

[3] Defendants are referring to the three-day "cooling off" period under the federal Truth in Lending Act and its accompanying regulation Z. (15 U.S.C. § 1601 et seq.; 12 C.F.R. § 226 (1998).)

visual acuity was 20/200 in *both* eyes. Furthermore, Ms. Jones submitted detailed evidence as to her mental condition at the time of the disputed transaction. Defendants submitted no contrary evidence as to her condition then or at the time she filed the complaint.

We conclude there was substantial evidence from which the trial court could find the loan documents were obtained through fraud in the execution without negligence on the part of Ms. Jones. Therefore the petition to compel arbitration was properly denied.

## II. *Defendants Were Not Entitled to a Statement of Decision.*

Defendants contend the court erred in refusing their request for a statement of decision on the denial of their petition to compel arbitration. We disagree.

Code of Civil Procedure section 632 provides a request for a statement of decision must be made "within 10 days after the court announces a tentative decision *unless* the trial is conducted within one calendar day . . . in which event the request must be made prior to the submission of the matter for decision." In this case the hearing on the petition lasted only a few minutes and defendants did not make a request for a statement of decision "prior to the submission of the matter for decision." Therefore, the trial court properly denied the defendants' untimely request.

### DISPOSITION

The order denying the petition for arbitration is affirmed.

Lillie, P. J., and Neal, J., concurred.