[No. D018378. Fourth Dist., Div. One. Mar. 15, 1994.]

NICOLAS MARSCH III, Plaintiff and Respondent, v.
RONALD WILLIAMS et al., Defendants and Appellants.

**COUNSEL**

Blase, Valentine & Klein, George C. Fisher, Packard, Mellberg & McConnell and David R. Packer for Defendants and Appellants.

Thorsnes, Bartolotta, McGuire & Padilla, Michael T. Thorsnes, Frederic L. Gordon and B. James Pantone for Plaintiff and Respondent.

## OPINION

**BENKE, J.**—In this appeal, defendant Ronald Williams and entities he controls[1] (unless otherwise indicated, collectively Williams) appeal an order denying their petition to compel arbitration of claims brought against them by plaintiff and respondent Nicolas Marsch III. Because Marsch's claims are not related to or grow out of any agreement which provides for arbitration, we affirm the order denying Williams's petition to compel arbitration.

### FACTUAL BACKGROUND

#### La Jolla

In 1973, long before Marsch had entered any relationship with Williams, Marsch and Willis Short formed the La Jolla Commercial Associates general partnership. Marsch and Short formed another general partnership, Wall Street Partners, in 1979. Each of these partnerships, collectively known as La Jolla, built and managed a commercial building in La Jolla, California. Marsch and Short were each 50 percent owners of La Jolla. Marsch and Short remained partners in La Jolla until 1983 when Marsch's wife, Patricia Marsch, purchased Short's interest in both partnerships.

Williams is the sole trustee of the Ronald Williams Living Trust (the Williams Trust) and president of Palo Alto Town & Country Village, Inc. (T&C), a California corporation. The Williams Trust is the sole shareholder of T&C. In May 1986, T&C acquired Patricia Marsch's half interest in the La Jolla partnerships for $5 million. The La Jolla partnership agreements have never contained arbitration clauses. No arbitration provisions were in the agreements as originally drafted by Marsch and Short or as amended when Patricia Marsch and T&C acquired their respective interests in the partnerships.

#### Horizon

In addition to their respective interests in the La Jolla partnerships, Marsch and Williams were also partners in the Horizon Properties general partnership (Horizon). Horizon owned 541 acres of land in Rancho Santa Fe and planned to develop 241 luxury home sites and a golf course on the land. The Horizon partnership agreement was executed on December 18, 1986, and contained an arbitration provision. Under the agreement, Marsch and Williams each obtained a 50 percent interest in the partnership.

---

[1] Palo Alto Town & Country Village, Inc., Ronald Williams Living Trust, R. Michael Murphy, California Structures, Inc., and Victoria Gray.

*Marsch/Williams Dispute*

The relationship between Marsch and Williams was not successful. According to Marsch, Williams wanted to obtain Marsch's interest in the Horizon project for far less than its fair value and toward that end exerted financial pressure on Marsch by failing to make timely capital contributions to the Horizon project and refusing to cooperate in either selling or refinancing the buildings owned by the La Jolla partnerships.

Marsch and Williams did try to resolve their differences without resort to litigation. However, work stopped on the Horizon project in February 1990. In August 1990, on a petition filed by T&C, the La Jolla partnerships were placed in involuntary bankruptcy and the buildings the partnerships owned were sold as part of the bankruptcy liquidation.

PROCEDURAL BACKGROUND

In July 1990 Marsch filed a complaint against Williams in which he alleged Williams's conduct in the Horizon partnership gave rise to causes of action for fraud, breach of fiduciary duty and intentional infliction of emotional distress. Williams responded to the Horizon complaint by filing a petition to compel arbitration and the petition was granted. A three-person arbitration panel (Panel) found that Williams had caused $48 million in damage to the Horizon partnership but that he was owed $70 million in advances he had made to the partnership.[2] The Panel also found that any claims arising out of the La Jolla partnerships were outside the scope of the arbitration.

Marsch commenced the instant action against Williams by filing a complaint on July 17, 1992. The complaint sought damages for breach of contract and fiduciary duty, fraud, intentional and negligent infliction of emotional distress, and other tortious acts based upon Williams's conduct in the La Jolla partnerships. The trial court denied Williams's motion to strike all references to Horizon in the complaint. Williams then filed a petition to compel arbitration and stay litigation. He argued that by relying upon Williams's conduct in Horizon to establish portions of his La Jolla case, Marsch's complaint had its "roots in the relationship created by the Horizon Properties Partnership Agreement" and was controlled by the arbitration clause in that agreement.

Marsch argued the arbitration clause did not control because (1) "All causes of action and damages sought in the present action relate solely to

---

[2]The Panel's award was confirmed by the trial court and the order confirming the award is the subject of Marsch's appeal in *Marsch v. Williams, ante,* page 238 [28 Cal.Rptr.2d 402].

conduct and duties owed the separate and distinct La Jolla Partnerships," and (2) the arbitration Panel had already ruled such rights and duties to be beyond the scope of the Horizon arbitration clause.

The trial court denied the petition to compel arbitration. The court found the La Jolla action did not arise out of and was not related to the Horizon partnership agreement and was not controlled by the arbitration clause in that agreement.

Williams filed a timely notice of appeal from the order denying his petition.

## Issue on Appeal

On appeal Williams argues the trial court erred in failing to find the arbitration clause in the Horizon partnership agreement covers the La Jolla claims raised by Marsch in this proceeding.

## Discussion

At the outset of our analysis it is essential to determine which contracts form the basis of the complaint in this case. Marsch's amended complaint seeks damages only for Williams's conduct in La Jolla, not for Williams's conduct in Horizon. It is undisputed that La Jolla and Horizon were separate enterprises, created and controlled by separate partnership agreements and pursing separate business objectives. Thus, it is to the La Jolla agreements, not the Horizon agreement, that we initially must look to determine the arbitrability of disputes in La Jolla.

Although California has a strong policy favoring arbitration (see *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899]; *Luster* v. *Collins* (1993) 15 Cal.App.4th 1338, 1344 [19 Cal.Rptr.2d 215]), our courts also recognize that the right to pursue claims in a judicial forum is a substantial right and one not lightly to be deemed waived. (*Lawrence* v. *Walzer & Gabrielson,* (1989) 207 Cal.App.3d 1501, 1507 [256 Cal.Rptr. 6]; *Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 643 [223 Cal.Rptr. 838].) Because the parties to an arbitration clause surrender this substantial right, the general policy favoring arbitration cannot replace an agreement to arbitrate. (*Boys Club of San Fernando Valley, Inc.* v. *Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266,

1271 [8 Cal.Rptr.2d 587]; *American Home Assurance Co.* v. *Benowitz* (1991) 234 Cal.App.3d 192, 200 [285 Cal.Rptr. 626].) Thus, the right to compel arbitration depends upon the contract between the parties, (*Blatt* v. *Farley*, (1990) 226 Cal.App.3d 621, 625 [276 Cal.Rptr. 612]; *Baker* v. *Sadick*, (1984) 162 Cal.App.3d 618, 623 [208 Cal.Rptr. 676]), and a party can be compelled to submit a dispute to arbitration only where he has agreed in writing to do so. (*Boys Club of San Fernando Valley* v. *Fidelity & Deposit Co.*, *supra*, 6 Cal.App.4th at p. 1271.) The agreement to arbitrate need not be contained in the contract at issue, but may be contained in a collateral document which is incorporated by reference. (*Ibid.*; *Chan* v. *Drexel Burham Lambert, Inc.*, *supra*, 178 Cal.App.3d at p. 639.)

■ As originally drafted by Marsch and Short, the La Jolla agreements did not contain arbitration clauses. When the La Jolla agreements were amended at the time Patricia Marsch acquired Short's interests in the partnerships, no arbitration clause was added. When T&C acquired Patricia Marsch's interests in La Jolla, both Williams and T&C's counsel reviewed the partnership agreements and again no arbitration provision was added. Had Williams or T&C wanted to include arbitration clauses in the agreements, they could have requested that they be included at that time. However, Williams and T&C made no such request, either at the time the agreements were amended or at any later date.

Moreover no collateral document containing an arbitration clause was ever incorporated by reference into the La Jolla agreements. The Horizon partnership agreement, which does contain an arbitration agreement, was executed *after* the La Jolla agreements, and it does not mention or refer to La Jolla.

Despite the lack of objective evidence which indicates the parties intended to submit disputes in La Jolla to arbitration, Williams nonetheless contends such disputes are arbitrable under the Horizon arbitration clause. Williams relies on the principle that contracts which provide for the arbitration of " ' " 'any controversy . . . arising out of or relating to the contract . . .' " [are] sufficiently broad to include tort, as well as contractual, liabilities so long as the tort claims *"have their roots in the relationship between the parties created by the contract."* [Citations.]' " (*Tate* v. *Saratoga Savings & Loan Assn.* (1989) 216 Cal.App.3d 843, 855 [265 Cal.Rptr. 440], quoting *Bos Material Handling, Inc.* v. *Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 105 [186 Cal.Rptr. 740], italics added.) According to Williams, La Jolla's claims have their roots in the relationship created by the Horizon agreement because Marsch has alleged Williams's attempt to obtain control

over Horizon involved undermining Marsch's ability to operate the La Jolla project. In our view the "roots of the relationship" theory cannot be applied in this manner.

In each of the cases cited by Williams a single commercial relationship was created either by a single contract or a set of interdependent contracts.[3] Illustrative of the cases Williams relies upon is *Pioneer Take Out Corp.* v. *Bhavsar, supra,* 209 Cal.App.3d at page 1355 (*Pioneer*). In *Pioneer* plaintiff and defendant entered into two contracts, a franchise agreement and a sublease of the premises where the franchise operated. The franchise agreement contained an arbitration clause but the sublease did not. The defendant breached both contracts and the plaintiff brought an unlawful detainer action which was based partially upon the breach of the franchise agreement.[4] On appeal from an order denying arbitration, the Court of Appeal reversed with instructions that the parties be ordered to arbitration.

Williams contends that under *Pioneer*, Marsch's allegations of Horizon related conduct makes Marsch's claims arbitrable under the Horizon agreement. Williams overlooks the fact that in *Pioneer* the franchise agreement was expressly incorporated into the sublease, thus making the arbitration clause in the franchise agreement applicable to disputes arising out of the sublease. (*Pioneer, supra,* 209 Cal.App.3d at p. 1355.) More importantly, Williams overlooks the fact the agreements in *Pioneer* were so closely connected in purpose—the defendant leased space from the plaintiff to operate the franchise—that in reality only one contractual relationship existed. In this context no unreasonable intrusion on the parties' expectations occurs when all their disputes are subjected to an arbitration provision which appears in one of several interdependent documents.

Unlike the situation in *Pioneer* and the remaining cases Williams cites, the Horizon agreement and the La Jolla agreements were not closely connected in purpose, did not incorporate one another's terms, were not executed at the same time, and the breach of the Horizon agreement did not necessarily lead to the breach of the La Jolla agreements. Where, as here, the parties have separate contractual relationships, which involve separate enterprises and most importantly separate commercial risks, an arbitration clause which governs one contractual relationship cannot be imposed in the other relationship without undermining the parties' reasonable expectations.

---

[3]See *Pioneer Take Out Corp.* v. *Bhavsar* (1989) 209 Cal.App.3d 1353, 1355 [257 Cal.Rptr. 749]; *Lewsadder* v. *Mitchum, Jones, & Templeton, Inc.* (1973) 36 Cal.App.3d 255 [111 Cal.Rptr. 405]; *Berman* v. *Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1003 [119 Cal.Rptr. 130]; *Izzi* v. *Mesquite Country Club* (1986) 186 Cal.App.3d 1309 [231 Cal.Rptr. 315]; and *Bos Material Handling, Inc.* v. *Crown Controls Corp., supra,* 137 Cal.App.3d 99.

[4]The sublease allowed the plaintiff the option of terminating it if the franchise agreement was breached.

In his La Jolla action Marsch seeks to vindicate the rights created by the La Jolla agreements. There is no agreement, either expressed in the documents executed by the parties or implied from the nature of the parties' relationships, that the Horizon dispute resolution mechanism must be used to vindicate those rights. Moreover, the evidence Marsch may choose to employ in proving his claims will not, by itself, demonstrate the existence of such an agreement.

### DISPOSITION

The order denying Williams's motion to compel arbitration and stay litigation is affirmed.

Respondent is awarded his costs on appeal.

Kremer, P. J., and Froehlich, J., concurred.

A petition for a rehearing was denied April 14, 1994, and appellants' petition for review by the Supreme Court was denied May 11, 1994.