[No. B171891. Second Dist., Div. Five. Oct. 28, 2004.]

FARHAD LARIAN, Plaintiff and Respondent, v.
ISAAC LARIAN, Defendant and Appellant.

752

**COUNSEL**

Kaye Scholer, Larry R. Feldman, Robert M. Turner and J. Andrew Sjoblom for Defendant and Appellant.

Howarth & Smith, Don Howarth, Suzelle M. Smith, Brian D. Bubb and Robert D. Brain for Plaintiff and Respondent.

Opinion

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, Isaac Larian, appeals from an order denying his motion to compel arbitration. The lawsuit containing numerous causes of action was filed by plaintiff, Farhad Larian. Plaintiff and defendant are brothers. We conclude there is no evidence the parties signed the September 28, or December 4, 2000, arbitration agreements because of any fraud in the inception or execution as defined by the California Supreme Court in *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415–416 [58 Cal.Rptr.2d 875, 926 P.2d 1061]. In the absence of evidence of fraud in the inception or execution of the September 28 or December 4, 2000, arbitration agreements, the trial court was required to grant defendant's motion to compel the parties to arbitrate their dispute. We reverse the order denying the motion to compel arbitration.

## II. BACKGROUND

A. *The Complaint*

The complaint, containing 10 causes of action, was filed on August 25, 2003. It alleges plaintiff and defendant formed an equal partnership in 1979 to import and distribute name brand consumer products. In 1982, the partnership was incorporated as a closely held corporation, ABC International Traders, Inc. In 1985 or 1986, plaintiff and defendant sold 10 percent of their stock to their brother-in-law. After the sale, plaintiff and defendant each owned 45 percent of the stock of the company. In 1994, plaintiff and defendant became equal 45 percent shareholders in MGA Hong Kong, Limited, and operated part of ABC International Traders, Inc. through this entity. In 2002, the name of ABC International Traders, Inc. was changed to MGA Entertainment, Inc. In 1993, plaintiff and defendant began having disputes over the operation of the company. Plaintiff and defendant discussed having one brother buy out the other's equity interest. An outside appraisal of the company valued the company at $35 million to $40 million.

By 1999, defendant, as president, assumed control of sales, product development, and financial matters. Plaintiff was less involved in the day-to-day sales and financial control of the company. In late 1999 or early 2000,

defendant became aware of "Bratz" dolls, a new product line which had a tremendous potential. The complaint alleges that, after learning of the product line, defendant devised a plan to keep the business opportunity, the Bratz doll product line, secret from plaintiff and to gain control of the company. The complaint alleged that defendant intended to gain control of MGA Entertainment, Inc., by buying plaintiff's shares at a depressed value. The buyout would not include the potential business opportunity involving the new doll line.

In "early" 2000, defendant called a meeting to discuss the new Bratz product line with selected members of the company. Defendant concealed the meeting and discussion about the proposed new product line from plaintiff. In February 2000, defendant tried to dissuade plaintiff from attending the New York Toy Fair. Plaintiff had routinely attended the New York Toy Fair in the past. Defendant was furious with plaintiff for attending the toy fair, where discussions and research for market potential and new product lines take place. Defendant expelled plaintiff from meetings plaintiff tried to attend. Plaintiff was excluded from any discussions defendant may have had relating to the Bratz product line at the fair.

In early March 2000, defendant offered to purchase all of plaintiff's 45 percent interest in the company, MGA Entertainment, Inc., for $9 million. The offer was based on a total value of the company at $20 million. This did not include plans and actions already taken regarding the Bratz product line, which allegedly would bring $3 billion in sales in the next few years. The financial information at the company was handled by defendant and its controller, Dennis Medici.

The complaint further alleged that throughout 2000, defendant repeatedly and routinely shared with plaintiff misleading financial information showing the company was performing poorly. In May 2000, defendant instructed Mr. Medici not to share any information about the financial operation of MGA Entertainment, Inc. with plaintiff. Defendant continued to conceal the company's plans and actions regarding the new doll line.

It is alleged that, on September 18, 2000, defendant caused the company to enter into a worldwide licensing agreement of the Bratz dolls and related items. Defendant concealed the existence of the licensing agreement from plaintiff. During September 2000, defendant continued to seek to buy plaintiff's interest in MGA Entertainment, Inc. The complaint alleges: "[Defendant] kept the Bratz opportunity and other information about the true financial

condition of the Company hidden from [plaintiff] in an effort to secure [plaintiff's] agreement to a proposed arbitration process with their uncle, Morad Zarabi. [Defendant] agreed, and induced [plaintiff] to agree, to the arbitration process without disclosing that during the arbitration he would conceal the Company's plans and actions undertaken regarding the Bratz line, and other financial information about the Company so that such information would not be included in Mr. Zarabi's valuation of the Company."

On September 28, 2000, plaintiff and defendant executed an "Agreement to Arbitrate and Selection of Arbitrator." Plaintiff alleges he was unaware of the true facts before executing the arbitration agreement; had he known the true facts, he would not have entered into the agreement to arbitrate and would not have agreed to sell his shares; he would have placed greater restrictions and obligations on the powers of any arbitrator including a requirement that the company be valued by an independent appraiser outside of the family; and defendant fraudulently concealed the true facts from plaintiff and the arbitrator during the arbitration process.

On December 4, 2000, as a result of the September 28, 2000, agreement to arbitrate the sale of the stock, the parties entered into a settlement and resolution of their differences, whereby plaintiff agreed to sell his shares to defendant at a below fair market price of less than $9 million. Plaintiff discovered the true facts in spring or summer 2002. Plaintiff requested rescission and damages based on the following theories: fraud and deceit in the inducement of the arbitration agreement (first); fiduciary duties breach (second); fraud and deceit in the arbitration process (third); breach of the implied covenant of good faith and fair dealing in the arbitration agreement (fourth); violation of California Corporations Code (fifth and sixth); fraud and deceit regarding the December 4, 2000 agreement (seventh); negligent misrepresentation (eighth); unfair competition in violation of Business and Professions Code section 17200 et seq. (ninth); and rescission based on mistake (10th).

## B. *The Motion to Compel Arbitration*

On October 24, 2003, defendant moved to compel arbitration of the action on the grounds the parties entered into a broad arbitration agreement which covers the disputes alleged in the complaint; by executing the September 28, 2000, agreement, plaintiff agreed to submit the fraud claim asserted in the complaint to the arbitrator; and the arbitrator must decide the fraud claims as a matter of law. In support of the motion, defendant attached a copy of the

September 28, 2000, arbitration agreement. Paragraph 5 of the September 28, 2000, arbitration agreement gave an uncle, Morad Zarabi, the power to arbitrate the disputes between the brothers.

Defendant declared that the parties participated in the arbitration. The arbitrator, Mr. Zarabi, retained an appraiser, an accountant, and attorneys. Mr. Zarabi also gathered information and conducted hearings. In December 2000, Mr. Zarabi, the arbitrator, issued his award. The December 4, 2000, agreement required defendant to purchase plaintiff's stock. According to defendant, "[The award] was embodied in the Agreement for Sale of Stock drafted by the arbitrator's attorneys, Stern & Goldberg." Under the terms of the December 4, 2000, agreement, plaintiff was to receive $8,775,000 for his stock. For the stock, defendant was to pay plaintiff $500,000 at the closing of escrow. Defendant was also obligated to execute a promissory note for the balance. Under the terms of the promissory note, defendant was required to pay plaintiff $2 million by April 15, 2001. Moreover, defendant was obligated to pay plaintiff $83,798.90 commencing the first of each month commencing June 1, 2001. Interest was to accrue at the rate of 9.5 percent per annum on unpaid sums. Paragraph 9 of the December 4, 2000, sales agreement contains the following arbitration clause: "[A]ny controversy between the parties arising out of this Agreement or the Agreements contained in the Exhibits attached hereto shall be submitted to [Mr. Zarabi] who shall serve as sole arbitrator with respect to said disputes. The decision of [Mr. Zarabi] shall be final and binding upon both parties."

On January 26, 2003, plaintiff submitted a list of claims to the arbitrator, Mr. Zarabi. Plaintiff asserted these claims were subject to arbitration. The list included: "The December 2000 appraisal of MGA, which the arbitrator relied upon to establish the value of MGA, was substantially understated as a result of [defendant's] concealment of the Bratz doll license agreement. That license agreement was material to the value of MGA but was not considered in setting MGA's value because of [defendant's] concealment from the arbitrator."

Plaintiff opposed the motion to compel arbitration on the grounds the court, not the arbitrator, must decide whether a party was fraudulently induced to consent to an arbitration agreement; fraud in the inducement of the arbitration agreement was not submitted to any arbitrator; and the court should resolve the fraud in the inducement claim because the arbitration proceedings could be void. Plaintiff declared that on September 18, 2000, defendant secretly finalized and obtained a worldwide license agreement for

the Bratz dolls. The September 18, 2000, agreement provided that defendant and MGA Entertainment, Inc., were the exclusive worldwide distributors of Bratz dolls and related products. Ten days later, on September 28, 2000, defendant induced plaintiff to sign the arbitration agreement without disclosing the Bratz opportunity and licenses. The Bratz product line has generated several hundred million dollars in revenues for MGA Entertainment, Inc., and is expected to earn more than $1 billion annually for the company. Further, according to plaintiff, Mr. Zarabi never returned an award. Rather, the December 4, 2000, stock sale agreement was the result of negotiations between plaintiff and defendant.

In reply to the opposition, defendant argued plaintiff did not dispute the critical facts which required arbitration of the dispute. Those facts included that the parties agreed to arbitrate the sale of the stock in September 2000. Mr. Zarabi, the arbitrator, decided which party should sell his stock to the other and the price. On December 4, 2000, the brothers signed the sales agreement incorporating the price and terms as determined by the arbitrator, Mr. Zarabi. The parties have fully performed the sales transaction. Defendant contended plaintiff submitted the fraud issue to the arbitrator in January 2003. Defendant further argued that the complaint only alleges fraud during the events leading up to the agreements; it does not allege facts showing fraud in the inducement or execution of the arbitration clauses. According to defendant, the issue of whether he fraudulently withheld information during the arbitration process must be decided by the arbitrator.

The trial court denied the motion to compel, concluding that the allegation of fraud in the execution of the arbitration agreement as alleged in the complaint must be decided by the court. In denying the motion, the court cited Code of Civil Procedure section 1281[1]; *Rosenthal v. Great Western Fin. Serv. Corp., supra,* 14 Cal.4th at page 419; and *Bolter v. Superior Court* (2001) 87 Cal.App.4th 900, 906 [104 Cal.Rptr.2d 888]. The trial court ruled that the complaint adequately alleged that had plaintiff known about the pending Bratz product line, he would not have signed the arbitration agreement, agreed to participate in the arbitration, and agreed to sell his shares in MGA Entertainment, Inc. The trial court further ruled: "It is true . . . that there are references to the arbitration process in the [f]irst [c]ause of [a]ction. The concealment of the Bratz line from the arbitrator was a . . . piece of the process. That is, plaintiff would have no complaint if the full facts had been revealed in the arbitration. Both those references do not eliminate the allegations that he would not have entered into the arbitration agreement but for the alleged fraud."

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## III. DISCUSSION

### A. Overview

■ The outcome of this appeal is controlled by the provisions of the California Arbitration Act. The September 28, 2000, arbitration agreement explicitly provides it is subject to the California Arbitration Act. Further, the December 4, 2000, agreement provides it is to be applied pursuant to California law. Hence, the United States Arbitration Act, title 9 United States Code section 1 et seq., is inapplicable to this appeal. (*Volt Information Sciences, Inc. v. Board of Trustees of Leland* (1989) 489 U.S. 468, 470 [103 L.Ed.2d 488, 109 S.Ct. 1248]; accord, *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, 714–726 [124 Cal.Rptr.2d 607].) California law favors enforcement of arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 [99 Cal.Rptr.2d 745, 6 P.3d 669]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Section 1281 provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." The trial court has authority to compel arbitration pursuant to section 1281.2, which provides in part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that . . . [¶] . . . [¶] (b) Grounds exist for the revocation of the. agreement." Plaintiff argues that he was fraudulently induced to enter into the September 28, 2000, arbitration agreement. It is this fraud that plaintiff argues warrants revocation, or to be more precise, nonenforcement of the September 28, 2000, arbitration agreement. Any doubts as to whether an arbitration clause applies to a particular dispute should be resolved in favor of requiring the parties to arbitrate. (*Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186, 1189 [33 Cal.Rptr.2d 188]; *United Transportation Union v. Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804, 808 [9 Cal.Rptr.2d 702].) However, the right to compel arbitration depends upon the existence of a valid agreement to arbitrate between the parties. (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 245 [54 Cal.Rptr.2d 628]; *Marsch v. Williams* (1994) 23 Cal.App.4th 250, 255 [28 Cal.Rptr.2d 398].) The question of whether a valid agreement to arbitrate exists is determined by reference to the law applicable to contracts generally.

(*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971–973 [64 Cal.Rptr.2d 843, 938 P.2d 903]; *Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1327–1328 [83 Cal.Rptr.2d 348].) Although, as noted, California has a strong public policy in favor of arbitration, there is no preference for the arbitral forum when the parties have not agreed to arbitrate. (*Freeman v. State Farm Mut. Auto Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal.Rptr. 477, 535 P.2d 341]; *Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 634 [68 Cal.Rptr.2d 167].)

▮ Before a party may be compelled to arbitrate a claim, the petitioning party has the burden of proving the existence of a valid arbitration clause and the dispute is covered by the agreement. (*Engalla v. Permanente Medical Group, Inc., supra*, 15 Cal.4th at p. 972; *Rosenthal v. Great Western Fin. Securities Corp., supra*, 14 Cal.4th at pp. 413–414.) If the moving party meets its burden, the opponent of arbitration has to prove by a preponderance of the evidence any defense to the petition or motion to compel the dispute to be arbitrated. (*Engalla v. Permanente Medical Group, Inc., supra*, 15 Cal.4th at p. 972; *Rosenthal v. Great Western Fin. Securities Corp., supra*, 14 Cal.4th at p. 413.) Each case must be decided on its own facts. (*King v. Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 357 [175 Cal.Rptr. 226]; *Williams Constr. Co. v. Standard-Pacific Corp.* (1967) 254 Cal.App.2d 442, 454 [61 Cal.Rptr. 912].)

### B. Supreme Court Authority

Three Supreme Court decisions define the limited scope of judicial review of a claim that fraud prevents enforcement of an arbitration clause. In *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 315 [197 Cal.Rptr. 581, 673 P.2d 251], a lease contained an arbitration clause. A dispute arose about the air conditioning in the premises and the tenant, a law firm, filed suit. The tenant argued it was fraudulently induced to enter into the lease which contained the arbitration clause. The trial court accepted the tenant's fraudulent inducement defense to the arbitration clause contention. The trial court entered an order denying the lessor's motion to compel arbitration.

▮ The Supreme Court held that claims of fraud in the inducement must be resolved by the arbitrator: "Therefore, in the absence of indication of contrary intent, and where the arbitration clause is reasonably susceptible of such an interpretation, claims of fraud in the inducement of the contract (as distinguished from claims of fraud directed to the arbitration clause itself)

will be deemed subject to arbitration." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street, supra,* 35 Cal.3d at p. 323.) Associate Justice Joseph R. Grodin then explained that the trial court's order denying the motion to compel the parties to arbitrate because of the fraudulent representations which induced the tenant to execute the lease which contained the arbitration clause was in error: "Indeed, the claim of substantive breach—that the air conditioning did not perform properly—is totally embraced within the claim of fraud—that the lessor knew, at the time of the lease, that the air conditioning would not perform. Thus, if the trial court were to proceed to determine the fraud claim it would almost certainly have to decide the claim of substantive breach as well, and the original expectations of the parties—that such questions would be determined through arbitration—would be totally defeated. However the fraud claim were determined, there would be virtually nothing left for the arbitrator to decide. We conclude that the arbitration clause is broad enough to include this claim of fraud in the inducement." (*Id.* at p. 324.)

In *Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at page 415, the Supreme Court explained the distinction between arbitrable and nonarbitrable fraud claims which are asserted as grounds for voiding an arbitration clause: "California law distinguishes between fraud in the 'execution' or 'inception' of a contract and fraud in the 'inducement' of a contract. In brief, in the former case ' "the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is *void.* In such a case it may be disregarded without the necessity of rescission." ' (*Ford v. Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011, 1028 [225 Cal.Rptr. 895].) Fraud in the inducement, by contrast, occurs when ' "the promisor knows what he is signing but his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is *voidable.* In order to escape from its obligations the aggrieved party must *rescind* . . . ." ' (*Ibid.*)" (*Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 415; see *Pacific State Bank v. Greene* (2003) 110 Cal.App.4th 375, 389, fn. 7 [1 Cal.Rptr.3d 739].)

■   The Supreme Court then explained that when fraud in the inception or execution of the *arbitration clause* is present (the first of the two types of fraud identified in the immediately preceding citation), the dispute is not arbitrable: "[C]laims of fraud in the execution of the entire agreement are not arbitrable under either state or federal law. If the entire contract is void *ab initio* because of fraud, the parties have not agreed to arbitrate any controversy . . . . [¶] [By contrast,] fraud in the inducement relating to other

contractual terms does not render the arbitration agreement unenforceable, even when it might justify rescission of the contract as a whole. By entering into the arbitration agreement, the parties established their intent that disputes coming within the agreement's scope be determined by an arbitrator rather than a court; this contractual intent must be respected even with regard to claims of fraud in the inducement of the contract generally." (*Rosenthal v. Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at p. 416.) The Supreme Court summarized its analysis thusly: "Claims that a party has employed fraud in inducing consent specifically to the arbitration agreement (e.g., by actively concealing its existence or misrepresenting its meaning or value) are, under *Prima Paint*[*v. Flood & Conklin* (1967) 388 U.S. 395, 404 [18 L.Ed.2d 1270, 87 S.Ct. 1801]], to be decided by the court, because they go to the valid making of the arbitration clause itself. Claims that, due to fraud in the execution of the agreement as a whole, the parties reached no contract containing an arbitration clause, are also to be decided by the court. But claims that the contract as a whole was obtained through fraud in the inducement are, in the absence of evidence of the parties' contrary intent, arbitrable under *Prima Paint*. Included in this rule of arbitrability are claims of a 'grand scheme' of fraud, or fraud 'permeating' the transaction." (*Rosenthal v. Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at p. 419.)

In *Rosenthal*, when defining fraud in the inception or execution as it relates to an arbitration clause, the Supreme Court adverted directly to section 163 of the Restatement Second of Contracts including comments a and c, at pages 443–444. (*Rosenthal v. Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at p. 420.) Section 163 of the Restatement Second of Contracts which is part of the discussion of misrepresentation states, "If a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent." Comment a to section 163 of the Restatement Second of Contracts which is cited in *Rosenthal* states in part: "*Rationale.* Under the general principle stated in § 19(2), a party's conduct is not effective as a manifestation of his assent unless he knows or has reason to know that the other party may infer from it that he assents. This Section involves an application of that principle where a misrepresentation goes to what is sometimes called the 'factum' or the 'execution' rather than merely the 'inducement.' If, because of a misrepresentation as to the character or essential terms of a proposed contract, a party does not know or have reasonable opportunity to know of its character or essential terms, then he neither knows nor has reason to know that the other party may infer from his conduct that he assents to that contract." Comment c to section 163 of the Restatement Second of

Contracts which is cited in *Rosenthal* part merely indicates that an agreement described in this provision is a "void contract."

In *Rosenthal*, the Supreme Court reviewed the evidence presented by the different plaintiffs in order to determine whether there was fraud in the inception or execution of the arbitration agreement. The fraud in the inception or execution evidence as it related to the arbitration clauses in *Rosenthal* differed amongst the plaintiffs. For varying reasons, some plaintiffs had not read the agreements containing the arbitration clauses. The Supreme Court adopted the following test for evaluating the fraud in the inception or execution claims of the plaintiffs which were asserted as a basis for voiding the arbitration clauses: "California law, like the Restatement, requires that the plaintiff, in failing to acquaint himself or herself with the contents of a written agreement before signing it, not have acted in an objectively unreasonable manner. One party's misrepresentations as to the nature or character of the writing do not negate the other party's apparent manifestation of assent, if the second party had 'reasonable opportunity to know of the character or essential terms of the proposed contract.' (Rest.2d Contracts, § 163, p. 443.) If a party, with such reasonable opportunity, fails to learn the nature of the document he or she signs, such 'negligence' precludes a finding the contract is void for fraud in the execution. (*C. I. T. Corporation v. Panac* [(1944)] 25 Cal.2d [547,] 549 [154 P.2d 710].) [¶] It follows that one party's *unreasonable* reliance on the other's misrepresentations, resulting in a failure to read a written agreement before signing it, is an insufficient basis, under the doctrine of fraud in the execution, for permitting that party to avoid an arbitration agreement contained in the contract." (*Rosenthal v. Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at p. 423; see *Lovejoy v. AT&T Corp.* (2004) 119 Cal.App.4th 151, 161 [14 Cal.Rptr.3d 117]; *Pacific State Bank v. Greene, supra,* 110 Cal.App.4th at p. 393.) Based on this legal premise concerning the scope of fraud in the inception or execution, the Supreme Court concluded some of the plaintiffs acted unreasonably in not reading the arbitration clauses. As to these plaintiffs, the trial court was not authorized to pass on their fraud defenses posited in response to the motion to compel arbitration. (*Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at pp. 425–426.) But the Supreme Court noted that other plaintiffs who executed investment contracts containing arbitration clauses, some of whom had very limited understandings of English, were blind, or suffered from Alzheimer's disease, could reasonably rely on defendants' agents' representations as to the contents of the agreements including the arbitration clauses. This latter group of plaintiffs were entitled to have the trial judge evaluate their fraud defenses to the arbitration clauses. (*Id.* at pp. 427–428; *Jones v. Adams Financial Services* (1999) 71 Cal.App.4th 831, 837 [84 Cal.Rptr.2d 151] [legally blind signatory to agreement suffering from dementia entitled to void arbitration clause on fraud in execution grounds].)

It bears emphasis that *Rosenthal* merely held that a fraud in the inception or execution defense to an arbitration demand was to be decided by a judge. A party is still entitled to argue a fraud defense before an arbitrator as a ground for invalidating the arbitration clause. The Supreme Court cautioned, "Whether a fraud claim that is insufficient as a defense to an arbitration demand may, if proven, nonetheless form the basis for equitable or other relief in the arbitral forum, is a separate issue, with which we have no concern in this case." (*Rosenthal v. Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at p. 423.)

The third Supreme Court case to hold that courts evaluate fraud in the inception or execution defense to an arbitration demand was *Engalla v. Permanente Medical Group, Inc.*, *supra*, 15 Cal.4th at pages 973–984. In *Engalla*, the plaintiffs presented evidence that defendant, a medical group, made misrepresentations concerning its arbitration clause. The relevant portion of the health care plan made the following representations as to the promised speed of the arbitration process provided by the medical group: " 'Within 30 days after initial service on a Respondent, Claimant and Respondent each shall designate an arbitrator and give written notice of such designation to the other, and Claimant shall forward $150, made payable to Kaiser Foundation Health Plan Arbitration Account, to Kaiser Foundation Health Plan. . . . This $150 will be deposited with Respondent's $150 in a special account maintained by Bank of America National Trust and Savings Association [and will] . . . provide the initial funds to pay the fees of the neutral arbitrator and expenses of arbitration as approved by him or her . . . . Within 30 days after these notices have been given and payments made, the two arbitrators so selected shall select a neutral arbitrator and give notice of the selection to Claimant and all Respondents served, and the three arbitrators shall hold a hearing within a reasonable time thereafter . . . .' " (*Id.* p. 962, fn. 3.) There was evidence that in fact the arbitration process provided by the health care group took years to complete. The plaintiffs also presented evidence the medical group knew its agents would not timely appoint arbitrators nor move towards and arbitration hearing. (*Id.* at pp. 974–976.) The Supreme Court concluded: "In sum, we conclude there is evidence to support the [plaintiffs'] claims that [the defendant] fraudulently induced [the plaintiffs] to enter the arbitration agreement in that it misrepresented the speed of its arbitration program, a misrepresentation on which [the plaintiffs'] employer relied by selecting [the defendant's] health plan for its employees, and that the [plaintiffs] suffered delay in the resolution of its malpractice dispute as a result of that reliance, despite [the plaintiffs'] own reasonable diligence. The trial court, on remand, must resolve con flicting factual evidence in order to properly adjudicate [the defendant's] petition to compel arbitration." (*Engalla v. Permanente Medical Group, Inc.*, *supra*, 15 Cal.4th at pp. 981–982, fns. omitted.) It bears emphasis that the misrepresentations constituting fraud in

the inception or execution related to whether the extraordinarily dilatory arbitral method at issue was really consistent with the promised arbitration process. In other words, in *Engalla*, there was evidence that the arbitral forum the defendant provided was far different from the promised manner in which arbitration hearings are normally conducted. (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2003) ¶ 5:116.1, pp. 5-59–5-60 (rev. # 1, 2002).)

■ In this case, there is no evidence of fraud in the inception or execution of the agreement as it relates to the arbitration clause. There is no evidence that plaintiff, to paraphrase section 163 of the Restatement Second of Contracts, as cited in *Rosenthal*, "neither kn[ew] nor ha[d a] reasonable opportunity to know of the character or essential terms of the" September 28 or December 4, 2000, arbitration agreements. Rather, the only evidence adduced by plaintiff indicates he was induced to enter into the September 28 arbitration and December 4, 2000, stock sale agreements because of defendant's misrepresentations concerning the prospective Bratz doll venture and the financial status of MGA Entertainment, Inc., which is fraud in the inducement. There is no evidence, as in *Engalla*, that the arbitration before Mr. Zarabi resulting from the September 28, 2000, arbitration agreement was other than as promised or reasonably expected. Further, there is no evidence of any false representations concerning any contemplated arbitral proceedings that will result from the arbitration clause in the December 4, 2000, stock sale agreement. Whether the alleged fraud concerning the concealment of the value and business prospects of MGA Entertainment, Inc. is legally or equitably sufficient to warrant nonenforcement of the September 28 or December 4, 2000, arbitration agreements is to be resolved in the arbitral forum. (*Rosenthal v. Great Western Fin. Securities Corp.*, supra, 14 Cal.4th at p. 423.) Hence, the trial court was required to grant the motion to compel arbitration.

Given our resolution of the fraud in the inception or execution issues, we need not address the parties' remaining contentions. Further, our resolution of the fraud in the inception or execution issues renders all of defendant's judicial notice and additional evidence requests moot. They are denied on that basis. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1058, fn. 6 [60 Cal.Rptr.2d 225, 929 P.2d 544] [judicial notice]; *No Oil, Inc. v. City of Los Angeles* (1974) 13 Cal.3d 68, 89, fn. 26 [118 Cal.Rptr. 34, 529 P.2d 66] [new evidence on appeal].)

## IV. DISPOSITION

The order denying the petition to compel arbitration is reversed. Upon issuance of the remittitur, the trial court is to grant the motion to compel

arbitration and stay civil proceedings. Defendant, Isaac Larian, is awarded his costs on appeal from plaintiff, Farhad Larian.

Grignon, J., concurred.

**MOSK, J.**, Concurring.—I concur in the result.

There was an arbitration pursuant to the September 28, 2000 Agreement to Arbitrate and Selection of Arbitrator. The arbitrator issued an award. Thus, because the arbitration had already taken place, there was no need to compel arbitration under that agreement. The parties entered into a new agreement on December 4, 2000, and pursuant to that agreement signed mutual general releases. Therefore, the only existing agreement between the parties was the December 4, 2000 agreement. That agreement contained an arbitration provision. I believe that arbitration should be compelled on the basis of that arbitration provision.

The December 4, 2000 agreement that contains the operative arbitration provisions includes the following choice-of-law clause. "This agreement shall be construed in accordance with and be governed by the laws of the State of California." The majority conclude that this clause renders the Federal Arbitration Act, title 9, United States Code section 1, et seq. (FAA) "inapplicable."

I am not so certain that the choice-of-law clause does exclude the application of the FAA. The issue is whether the applicable choice-of-law clause manifests an intention to be governed by California procedural rules applicable to arbitrations. (See *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, 722 [124 Cal.Rptr.2d 607].) In *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 58–59 [131 L.Ed.2d 76, 115 S.Ct. 1212], the United States Supreme Court concluded that a choice-of-law clause dealing with a clause specifying that the agreement "shall be governed by the laws of the State of New York" did not preclude the applicability of the FAA. In *Blue Cross of California v. Superior Court* (1998) 67 Cal.App.4th 42, 62–63, fn. 8 [78 Cal.Rptr.2d 779], we said that *Volt Information Sciences, Inc. v. Board of Trustees* (1989) 489 U.S. 468 [103 L.Ed.2d 488, 109 S.Ct. 1248] "does not stand for the proposition a general choice of law provision evidences in all cases an express intent to incorporate a state's arbitration rules into an arbitration agreement."

If we did apply federal law, the result would be the same. Both federal and California state law have adopted the principle of separability by which the arbitrator is given the power to determine the validity of the contract without calling into question the validity of the arbitration clause from which he or she derives his or her power. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 315 [197 Cal.Rptr. 581, 673 P.2d 251]; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395 [18 L.Ed.2d 1270, 87 S.Ct. 1801]; 1 Domke on Commercial Arbitration (3d ed. 2003) § 11.2, pp. 11.6–11.10.)

Accordingly, I agree with the conclusion of the majority.

A petition for a rehearing was denied November 16, 2005, and on November 11, 2004, the opinion was modified to read as printed above.