Filed 9/2/14  Baseball-Players Club v. Brand-in Entertainment CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BASEBALL-PLAYERS CLUB, LLC et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> BRAND-IN ENTERTAINMENT, LLC et al., <br><br> Defendants and Appellants. | B251173 <br><br> (Los Angeles County <br> Super. Ct. No. BC511215) |

APPEAL from an order of the Superior Court of Los Angeles Country, Barbara Ann Meiers, Judge.  Affirmed.

Silverman Shin Byrne & Gilchrest, Robert M. Gilchrest and Amy S. Russell, for Defendants and Appellants.

Salisian Lee, Richard H. Lee, Neil S. Salisian, and H. Han Pai, for Plaintiffs and Respondents.

_____

Brand-in Entertainment, LLC, (BiE) and Rolfe Auerbach appeal from the order denying their petition to compel arbitration in a breach of contract case filed by respondents Baseball-Players Club LLC (BPC), America's Greatest Athlete LLC (AGA), and Wesley Morris Entertainment, Inc. (WME). We conclude appellants rely on arbitration clauses in written contracts unrelated to the dispute for which respondents seek damages, and affirm the order.

**FACTUAL AND PROCEDURAL SUMMARY**

As alleged in the complaint, appellant BiE is in the business of "brand integration marketing and advertising," such as product placement and integrated television commercials. Appellant Auerbach is BiE's chief executive officer. Respondent BPC was formed to hold assets for a one-episode sports competition television show that eventually aired under the name "The Players Club." Respondent AGA was the holding company, and WME was the production company for the show.

In June 2011, Bill Garnet and Jacquelynn Lueth, the owners of AGA and WME, met with Auerbach and a BiE account executive to discuss "The Natural," a proposed reality elimination competition television series. Auerbach represented that BiE would be able to obtain approximately $10 million in sponsorship financing for the series. Sponsorship financing for another series, "Bragging Rights," also was discussed.

In September 2011, respondents decided to produce "a 'one-off' sports competition television show," initially titled "Gameday" and then retitled "The Players Club." As the concept of the show evolved, the featured athletes changed from football to basketball to baseball players. Auerbach assured respondents that there would be no problem finding sponsors to cover one-third of the costs of the show up front, one-third after completion of principal photography, and one-third after the show aired. Later, he represented he would have $3 million in sponsorship funding for "The Players Club" if the show aired after January 2012. The show was therefore rescheduled to air during baseball season.

2

Based on Auerbach's representations that he had secured $3 million in sponsorship funding, respondents began filming the show. They were later told the secured funding would be available by the air date, and were unable to make certain scheduled payments on time. Still later, Auerbach represented that some sponsors had reduced their funding, but that other sponsorship deals for "The Players Club" were available. Before the show aired in May 2012, Auerbach finally admitted BiE had secured no sponsorship funding. "The Players' Club," which cost respondents over $1.45 million to produce, aired on May 6, 2012, virtually commercial free. At some point, respondents also learned that BiE had never obtained any sponsorship funds for the "companion show, 'The Natural.'"

In 2013, respondents sued appellants for negligence, fraud, negligent misrepresentation, breach of oral contract, and breach of the implied covenant of good faith and fair dealing. Respondents alleged appellants orally agreed to obtain at least $3 million in sponsorship funding for "The Players Club" in exchange for a 25 percent commission, to be paid from the funding they obtained. As to all causes of action, they sought damages of no less than $3 million, minus a commission of $750,000.

Appellants filed a petition to compel arbitration, claiming the parties had entered into binding agreements to arbitrate "any disputes arising out of their relationship for securing product integration agreements for Plaintiffs' shows." In support of the petition, appellants presented two contracts, signed by Lueth on behalf of WME and AGA in July and August 2011, and retaining BiE to procure corporate sponsors for the initial season of "Bragging Rights" and "The Natural" respectively. Each of the two agreements contains an arbitration clause, providing for arbitration of "all disputes, controversies, or claims arising out of or relating to" that agreement.

In their opposition to the petition, respondents claimed they sought damages only for the production of "The Players Club," for which there was no written agreement. In reply, appellants argued that the complaint created the impression respondents sought damages relating to all three shows, since "The Natural" and "Bragging Rights" were part of the same transaction and were mentioned numerous times throughout the complaint.

3

The petition was summarily denied, and this appeal followed.

## DISCUSSION

An arbitration of a dispute may be compelled only if there is a written agreement to arbitrate. (*Marsch v. Williams* (1994) 23 Cal.App.4th 250, 255). Whether the arbitration clause of a particular agreement applies to a dispute alleged in a complaint is reviewed de novo. (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1320.) Under the normal rules of contract interpretation, the clear terms of an arbitration provision, interpreted in the context of the entire contract, control. (*Id*. at p. 1321.)

The written arbitration provisions on which appellants rely appear in contracts that do not mention "The Players Club." Rather, each written contract expressly retains BiE "to elicit and enter into Product Integration Agreements with third parties (corporate sponsors) in connection with" a particularly described project: "the initial season of the Television Series currently titled '*Bragging Rights . . .*'" and "the initial season . . . of the U.S. telecast of the Television Series currently titled, '*The Natural—The Search for America's Greatest Athlete*,' . . . and possibly additional seasons . . . ." The arbitration clause in each agreement provides that "all disputes, controversies, or claims arising out of or relating to this Agreement shall be submitted to binding arbitration . . . ." A broad arbitration clause of this type embraces tort liabilities as well. (See *EFund Capital Partners v. Pless*, *supra*, 150 Cal.App.4th at pp. 1322–1323.)

Appellants argue that the three tort causes of action in the complaint—for negligence, fraud, and negligent representation—arise from or relate to the agreement to find corporate sponsors for "The Natural," and are subject to its arbitration clause because they include allegations pertaining to that agreement. In the trial court, as well as on appeal, respondents have represented that they seek damages solely related to the production of "The Players Club." The uniform prayer for damages in the amount of $3 million, minus $750,000 in commission, supports this representation. The amounts derive from allegations in the claim for breach of oral contract, which is limited to the alleged "Players Club" agreement. Although the complaint alleges appellants promised

4

to obtain $10 million in sponsorship funds for "The Natural," and misrepresented having secured funds for that series, those allegations are not directly relevant to the damages respondents claim to have suffered in producing "The Players Club." Nor have damages for "The Players Club" "unquestionably . . . arisen" under "The Natural" agreement, whose terms do not apply to any other show. (Cf. *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 685 [tort claims based on service provider's failure to renegotiate reimbursement rates arose from service agreement establishing those rates].) Appellants' argument that the "Bragging Rights" agreement is relevant to the dispute in this case is even less convincing since "Bragging Rights" is only mentioned in passing in the complaint, and no specific allegations about it are made under any cause of action.

Both sides treat the allegations in the unverified complaint as binding judicial admissions. While the doctrine of judicial admissions places factual allegations beyond dispute (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 456), it does not determine their relevance to particular causes of action. Nor does it apply when the admissions have been superseded by amendment, particularly when the original pleading is unverified. (*Ibid*.) To the extent respondents represent their claims are limited to "The Players Club," they have abandoned any alleged dispute regarding "The Natural" or "Bragging Rights." (See *Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1261 & fn. 11 [statements in brief may be treated as proposed amendments of complaint abandoning certain claims].)

Appellants argue that the arbitration provisions of the written agreements apply to the parties' entire relationship since respondents allegedly entrusted appellants "with the rights to secure sponsorship financing" for all three shows. *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, on which appellants chiefly rely, is inapposite because it did not deal with separate agreements. The court in that case held that a dispute over the purchase of future contracts was subject to an arbitration clause in a brokerage agreement for the purchase and sale of securities or commodities, both because future contracts qualify as securities and commodities, and because the arbitration clause

5

applied broadly to disputes arising out of the client-broker relationship. (*Id*. at pp. 1005–1006.)  Notably, the agreement in that case established such a relationship for "all transactions" between the parties.  (*Id*. at p. 1002.)

Although appellants claim that the written agreements in this case establish a similarly broad transactional relationship between the parties, the scope of each agreement is expressly limited to securing sponsors for a particular television series. "Where, as here, the parties have separate contractual relationships, which involve separate enterprises and most importantly separate commercial risks, an arbitration clause which governs one contractual relationship cannot be imposed in the other relationship without undermining the parties' reasonable expectations." (*Marsch v. Williams*, *supra*, 23 Cal.App.4th at p. 256.)  That the parties entered into separate agreements on different dates with regard to obtaining sponsors for separate television shows (two proposed multi-season series and one single-episode special) indicates they undertook separate commercial risks and did not expect to establish a general transactional relationship governed by the arbitration clause of any one particular agreement.

Because we conclude that neither written agreement is relevant to the dispute in this case, we need not decide whether the nonsignatory respondents should be compelled to arbitrate under one or the other agreement.  Nor is it necessary to remand the case for appellants to renew their petition since the record in this case is sufficiently clear. (Cf. *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1244 [trial court did not err in denying petition to compel arbitration without prejudice on unclear record].)

## DISPOSITION

The order is affirmed.  Respondents are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


MANELLA, J.


EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution