Filed 7/28/22; Opinion on transfer from Supreme Court

OPINION ON REHEARING

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LUIS MUNOZ et al., | D078215 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2019-00017904-CU-FR-CTL) |
| RAJESH PATEL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Reversed and remanded with instructions.

Spierer, Woodward, Corbalis & Goldberg and Stephen B. Goldberg for Plaintiffs and Appellants.

Bradley L. Jacobs for Defendants and Respondents.

I

INTRODUCTION

Luis Munoz and LR Munoz Real Estate Holdings, LLC (LRM Holdings) (together, Munoz) bought a hotel from a company owned and managed by Rajesh Patel (Rajesh) and his son, Shivam Patel (Shivam).  Before escrow closed, the parties negotiated a leaseback arrangement requiring Munoz to

lease the hotel back to the Patels' company after the sale.  Escrow closed and the parties thereafter executed the previously-negotiated lease—or so Munoz thought.  According to Munoz, the Patels secretly swapped out the agreed-upon lease for a different one—a lease substantially more beneficial to the Patels and worse for Munoz—and then tricked him into signing it.

Munoz filed the present action against the Patels, an alleged alter ego entity of the Patels called Inn Lending, LLC (Inn Lending), and other defendants involved in the sale, asserting causes of action for breach of contract, breach of the covenant of good faith and fair dealing (hereafter, bad faith), promissory fraud (hereafter, fraud), and elder financial abuse, among other causes of action.  Rajesh and Inn Lending demurred to the operative second amended complaint, the trial court sustained the demurrer without leave to amend, and Munoz appealed the ensuing judgment.  In a prior opinion, this court reversed the judgment and determined, among other things, that Munoz alleged a viable fraud cause of action based on a theory of fraud in the execution.

Rajesh and Inn Lending petitioned the Supreme Court for review, arguing that rehearing was required under Government Code section 68081 because this court's decision was based upon an unbriefed issue—fraud in the execution.  The Supreme Court granted review and transferred the matter back to our court with directions that we vacate our decision and rehear the case after allowing the parties to file supplemental briefs addressing whether the complaint stated a cause of action for fraud in the execution.  We followed the Supreme Court's instructions and the parties have filed supplemental briefs addressing whether the complaint adequately alleges fraud in the execution.

2

With the benefit of these supplemental briefs, we now conclude the operative complaint alleges facts sufficient to state a viable cause of action for fraud in the execution against Rajesh, but not against Inn Lending. Additionally, we conclude the complaint pleads facts sufficient to state an elder financial abuse cause of action against both Rajesh and Inn Lending. Finally, we conclude Munoz has failed to establish that the trial court erred in dismissing his breach of contract and bad faith causes of action.

In light of these determinations, we reverse the judgment and remand the matter with instructions that the trial court vacate its order sustaining the demurrer to the entire complaint and enter a new order:  (1) sustaining without leave to amend the demurrer to the first cause of action for breach of contract and the eighth cause of action for bad faith; (2) overruling the demurrer to the third cause of action for financial elder abuse; (3) sustaining without leave to amend the demurrer to the seventh cause of action for fraud against Inn Lending; and (4) overruling the demurrer to the seventh cause of action for fraud against Rajesh.

## II

## BACKGROUND

### A

### *Factual Background*

Because this is an appeal from a judgment entered after the sustaining of a demurrer, we accept as true the following allegations from the operative complaint.  (*Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 160, fn. 4.)

#### 1

#### *The Sale and Lease*

The Patels own and manage PL Hotel Group, LLC (PL), which owned a hotel and restaurant in Ridgecrest, California (the Hotel) prior to the events

giving rise to this lawsuit. The Hotel was closed for years and needed renovations. The Patels began renovating the property, but were unable to obtain conventional financing to complete the project.

The Patels decided to sell the Hotel and enter a leaseback arrangement with the buyer, which would allow PL to remain in possession of the property after the sale. An offering memorandum circulated to prospective buyers stated the sale would be subject to a "New 20 Year Absolute NNN Lease" starting at the close of escrow. A NNN lease, also known as a triple-net lease, is one in which the lessee pays a property's operation and maintenance costs including taxes, utilities, and insurance. (*Tin Tin Corp. v. Pacific Rim Park, LLC* (2009) 170 Cal.App.4th 1220, 1226, fn. 3; 2A Miller & Starr, Cal. Real Est. Forms (2d ed. 2020) Ch. 2 Summary.) The Patels used the promise of a triple-net lease to lure in prospective buyers and inflate the Hotel's sale price, but they never intended to execute a triple-net lease.

Luis Munoz is an 80-year old real estate investor and the owner of LRM Holdings. In June 2018, the Patels' agent, Steven Davis, sent the Hotel's offering memorandum to Munoz's agent, Ryan Cassidy.[1] In early July, the parties agreed on a $2.875 million purchase price for the Hotel (which they later reduced to $2.835 million).

Cassidy drafted the purchase agreement for the sale, which required PL to provide Munoz a "fully executed lease" with "an annual rent payment of $230,000 NNN paid monthly." It required PL to provide the executed lease within five days of the effective date of the purchase agreement. On or about July 12, Munoz (on his own behalf) and Shivam (acting on behalf of PL) executed the purchase agreement and the property went into escrow.

---

[1] All dates are in 2018 unless otherwise specified.

On July 17, Davis sent a proposed but unexecuted triple-net lease to Cassidy.  In an accompanying email, Davis reserved PL's right to "make further edits in case there was an error or oversight" with the lease.  This lease, which the parties refer to as the "July 17 lease," was circulated "multiple times without change" during the 60-day escrow.  It was the only lease circulated before the close of escrow.  At no time before the close of escrow did the Patels or anyone else associated with PL contend there was an "error or oversight" with the lease.

The July 17 lease was for a 20-year term, with options to renew.  Rent began at $19,167 per month and periodically increased over the 20-year term.  The tenant (PL) was solely responsible for maintenance and repairs, insurance, utilities, and taxes.

On August 29, Davis sent an email to Cassidy attaching the July 17 lease and stating it was the version that would "be signed at closing."  By the scheduled close of escrow, the parties still had not executed the July 17 lease; all the same, escrow closed on September 11.

On September 13, two days after escrow closed, Shivam sent an email to Cassidy stating, "Attached is the lease for Ridgecrest," and requesting Munoz's countersignature—thus making it appear as though he had signed the July 17 lease.  But the lease Shivam circulated, which the parties refer to as the "September 13 lease," differed from the July 17 lease in several ways.  For example:

- *Maintenance and Repair*:  Under the July 17 lease, the landlord (Munoz) had no obligation to maintain or repair the premises.  But the September 13 lease provides that the landlord "shall have the duty to repair" everything beyond normal wear and tear.

- *Renovations*:  Under the July 17 lease, the tenant (PL) was obligated to complete the half-finished renovations on the property.  Under the September 13 lease, the landlord bore that responsibility.

5

- *Taxes*: The July 17 lease required the tenant to pay taxes relating to the premises. The September 13 lease limits that obligation to taxes "attributable solely to any business property or personal property of the Tenant" on the premises.

- *Assignment and Subletting*: The July 17 lease allowed the tenant to sublease the premises to a nonaffiliated entity only with the landlord's consent. The September 13 lease allows a sublease "at any time" without the landlord's consent.

- *Tenant's Continuing Liability*: Under the July 17 lease, an assignment or sublease did not release the tenant's liability, including for rent. But under the September 13 lease, a permitted assignment or sublease "eliminate[s]" the tenant's liability.

- *Landlord's Remedy*: The September 13 lease adds a new provision that makes retaking possession the landlord's sole remedy on tenant's default.

Munoz countersigned the September 13 lease after only a cursory review, believing it was the July 17 lease the parties had circulated numerous times and approved before the close of escrow.

2

*The Loan*

Meanwhile, the Patels put into action a separate but related plan to obtain security interests in the Hotel, as well as Munoz's other properties. In short, they hoped to force Munoz into default on a loan he took out to buy the Hotel, which would then enable them—as security interest holders—to foreclose on his properties. To achieve this end, the Patels secretly positioned themselves as Munoz's secured lenders for the Hotel purchase.

Specifically, Davis (the Patels' agent) contacted Cassidy (Munoz's agent) and recommended that he hire David Hamilton of Pacific Southwest Realty Services (collectively, Hamilton) as a loan broker for the purchase of

6

the Hotel. Based on this recommendation, Munoz retained Hamilton to help him find a lender.

On July 25, Hamilton told Munoz that a private lender, Inn Lending, would finance the Hotel purchase at six percent annual interest, secured by a deed of trust on the Hotel only. Munoz would need to execute a personal guarantee, but he would not have to pledge collateral in connection with the guarantee. These proposed terms were presented to Munoz in a letter of intent, which he signed on August 6. That same day, Munoz paid Hamilton a $7,500 administrative fee to have the loan documents prepared.

As it turns out, Inn Lending did not exist when Munoz signed the letter of intent. It came into existence several weeks later, on August 23. Even worse, Inn Lending—once it finally came into existence—was the Patels' alter ego entity, which they managed and controlled.

On August 24, Hamilton sent the loan documents to Munoz. Like the leaseback arrangement, the loan was another bait-and-switch. The approximately 300 pages of loan documents varied from the letter of intent in several ways: (1) the interest rate was 7.3 percent, not 6 percent; (2) the payoff amount was $300,000 higher than it should have been; and (3) the loan was secured not only by the Hotel, but also by Munoz's personal property and his other real estate holdings worth "several millions of dollars." On September 5, Munoz—unaware of these differences—signed the loan documents, and Inn Lending became Munoz's secured lender.

B

*Procedural Background*

On October 1, Munoz—the Hotel's new owner and landlord—sent Shivam a request for payment of the first month's rent. Shivam refused to make any payment and responded by stating that, under the September 13

7

lease, Munoz had a duty to reimburse PL for costs related to the Hotel renovation. A few days later, an attorney representing PL made a demand upon Munoz to reimburse PL for Hotel renovation costs.

In November, Munoz filed a complaint in the superior court against the Patels, PL, Inn Lending, and other defendants involved with the sale and loan. Demurrers to the original complaint and the first amended complaint were sustained with leave to amend and Munoz filed the operative second amended complaint in December 2019. The operative complaint alleged the following causes of action against Rajesh and Inn Lending: breach of contract (first cause of action; against Inn Lending only); elder financial abuse (third cause of action; against both defendants); fraud (seventh cause of action; against both defendants); and bad faith (eighth cause of action; against Inn Lending only).[2] For the fraud cause of action, Munoz sought: (1) monetary damages; (2) a judicial declaration of the parties' contractual rights; and (3) either rescission of the purchase agreement, the September 13 lease, and the loan documents, or reformation of the September 13 lease and the loan documents.

Rajesh and Inn Lending jointly demurred to the operative complaint. They asserted any allegations pertaining to the sale of the Hotel and the lease did not apply to them because they "were in no way involved in the underlying [sale] transaction and/or in negotiating the terms of the sale/lease …." They claimed "the only involvement [they] had was with the loan transaction." And, as far as the loan transaction was concerned, they argued Munoz failed to plead causes of action against them because the letter of intent was not a binding contract and they never "spoke to Munoz, let alone

---

[2] The operative complaint initially asserted a bad faith cause of action against Rajesh. However, Munoz voluntarily dismissed the claim.

8

made any misrepresentations to him and/or LRM [Holdings]" about the loan transaction.

Munoz opposed the demurrer. He argued Rajesh was liable for certain misrepresentations that were made to him because his agent (Davis) circulated the misleading offering memorandum at his instruction and both Patels—including Rajesh—secretly swapped the September 13 lease for the July 17 lease. Munoz argued his failure to review the lease and loan documents before signing them did not preclude recovery because equitable relief, such as rescission or reformation, is available when one party's fraud or trickery induces the other party to execute an instrument without reviewing it.

After a hearing, the court sustained the demurrer without leave to amend and entered a judgment in favor of Rajesh and Inn Lending. Munoz appeals the judgment.[3]

III

DISCUSSION

A

*Legal Standards*

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) " 'We treat the demurrer as admitting all material facts properly pleaded[.]' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) We "accept as true not only those facts alleged in the complaint but also facts that may be implied or inferred from those

_____

[3]    The trial court also sustained, in part, a demurrer filed by Shivam and PL. They are not parties to the present appeal.

9

expressly alleged." (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403.)  "We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law."  (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125; accord *Blank*, at p. 318.)

"In considering a trial court's order sustaining a demurrer without leave to amend, ' "we review the trial court's result for error, and not its legal reasoning." ' " (*Morales v. 22nd Dist. Agricultural Assn.* (2018) 25 Cal.App.5th 85, 93.)  We " 'affirm the judgment if it is correct on any theory.' " (*Ibid*.)  "And when [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm."  (*Blank, supra*, 39 Cal.3d at p. 318.)  "The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Ibid*.)

B

*The Court Properly Dismissed the Breach of Contract and Bad Faith Claims*

The trial court sustained the demurrer to Munoz's first cause of action for breach of contract, reasoning he failed to plead facts showing the existence of a binding contract between himself and the demurring parties. On appeal, Munoz contends the letter of intent—which the parties executed in anticipation of the loan transaction—was "binding as to certain loan terms" because the loan terms were "negotiated and agreed to."  We disagree.

" 'Preliminary negotiations or an agreement for future negotiations are not the functional equivalent of a valid, subsisting agreement.  "A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further

10

manifestation of assent." ' " (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1389, quoting *Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 59; see also *Beck v. American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1562–1563 [letter stating it was an "outline of [the parties'] future agreement" and contemplating the drafting of a future contract was a nonbinding agreement to agree], superseded by statute on other grounds as recognized in *Epic Medical Management, LLC v. Paquette* (2015) 244 Cal.App.4th 504, 516, fn. 6.)

On its face, the letter of intent does not evince the parties' mutual assent to the proposed loan terms expressed therein. It begins with a proviso stating it is merely a "financing proposal," and the "proposal is for discussion purposes only." Elsewhere, it states it does "not serve as a binding agreement on the part of [the] lender or [the] applicant." Further, the letter of intent is notable for what it does *not* do. Nowhere does it require the lender to issue a loan upon the parties' execution of the letter of intent or upon the satisfaction of any other condition precedent. Instead, it simply requires the lender to "begin its due diligence" after the parties have executed the letter of intent and Munoz has paid an administrative fee. Because the letter of intent unambiguously states it is a nonbinding proposal for discussion purposes only, it cannot reasonably be read as an enforceable contract binding the parties to issuance of a loan with specific loan terms. (See *SCC Acquisitions v. Central Pacific Bank* (2012) 207 Cal.App.4th 859, 865 [term sheet "could not have been clearer" that "it was not a commitment, representation, or promise to renew [a] loan on the terms set forth therein" because it stated it was " 'for discussion purposes only … and should not be construed as a commitment to lend.' "], italics omitted.)

11

On appeal, Munoz does not argue that Inn Lending or Rajesh entered into, or breached, any alleged contract other than the letter of intent.[4] Further, he makes no other cogent argument in support of his claim that the trial court erroneously sustained the demurrer to his breach of contract cause of action. Thus, he has not satisfied his burden of establishing that the court erred by sustaining the demurrer to his breach of contract cause of action.

Munoz's challenge to the dismissal of his bad faith cause of action fares no better. The trial court found Munoz did not plead facts stating a bad faith cause of action because such a claim requires "the existence of a binding contract," and, as just noted, the letter of intent is not a binding contract.

Munoz spends just four sentences of his appellate briefing addressing this ruling. He argues—without citation to the operative complaint—that the Patels "altered the July 17 Lease and Loan," which "had the effect of preventing [him] from having the ability to perform on the agreements and put [him] in instant breach of the Loan – thereby depriving [him] of the benefit of [his] bargain." Further, he states—again without citation—that "the Patels' bad acts are attributable to [Inn Lending]" because the operative complaint "alleges that the Patels *are* [Inn Lending]."

" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.) Munoz has not met this burden. He has not supported his argument with citations to the operative complaint or any other component of the appellate record. He has failed to cite any legal

---

4    The operative complaint refers to numerous other agreements, such as the purchase agreement, the leases, and the loan documents. But, on appeal, Munoz does not argue that he pleaded breaches of any of these agreements.

12

authorities supporting his argument that Inn Lending acted in bad faith, with the exception of one inapposite judicial decision.[5]  Further, he has not explained *how* he believes the Patels' alleged bait-and-switch put him in "instant breach" of the loan or otherwise prevented him from fulfilling his contractual allegations.  For all these reasons, Munoz's claim of error is waived.  (*United Grand,* at p. 153; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 829 ["The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived."].)

Because Munoz has not established that the trial court erroneously sustained the demurrer to his breach of contract or bad faith causes of action, we affirm the trial court's dismissal of these causes of action.[6]

C

*The Court Properly Dismissed the Fraud Claim Against Inn Lending, but Erroneously Dismissed the Fraud Claim Against Rajesh*

The trial court sustained the demurrer to Munoz's seventh cause of action for fraud on the following grounds:  (1) with respect to Rajesh, Munoz fails to plead facts sufficient to establish the element of justifiable reliance;

---

[5]    Munoz cites *Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873 in support of his contention that damages may be recovered "for [a] breach of the covenant of [good faith and] fair dealing absent [a] breach of the contract."  The *Digerati* decision—which was an appeal from a special motion to strike order—does not stand for this proposition.  In any event, the proposition is irrelevant to whether Munoz pleads facts sufficient to state a bad faith cause of action.

[6]    By the time Rajesh and Inn Lending filed their demurrer, Munoz asserted breach of contract and bad faith causes of action against Inn Lending only.  However, to the extent there is uncertainty on this issue, our affirmance of the trial court's dismissal of these causes of action would apply equally to both Rajesh and Inn Lending.

13

and (2) with respect to Inn Lending, Munoz fails to plead facts showing that Inn Lending, or anyone acting on its behalf, made false promises (i.e., misrepresentations) to Munoz. As we will explain, we disagree with the former finding and agree with the latter finding.

1

*The Operative Complaint States a Fraud Claim Against Rajesh*

The operative complaint and Munoz's appellate briefs are, at times, vague concerning which misrepresentations form the basis of the seventh cause of action. As best we can discern, Munoz alleges there were three categories of fraudulent misrepresentations: (1) the defendants' false promises that PL would enter into a triple-net lease; (2) the defendants' misleading statements implying the September 13 lease was the July 17 lease, and their related concealment of the fact the Patels had swapped the leases; and (3) the defendants' false statements on the letter of intent for the loan. We need only focus on the second category because it gives rise to a valid cause of action for fraud in the execution against Rajesh.[7]

Fraud in the execution, sometimes known as fraud in the inception or fraud in the factum, occurs when "the promisor is deceived as to the nature of

---

[7] Munoz captioned his seventh cause of action, "Promissory Fraud," a subspecies of the tort of deceit whereby a promisor makes a promise without the intention of satisfying it. (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1498.) The alleged misrepresentations in the second category are not promises made without the intent to perform; thus, they do not give rise to a promissory fraud cause of action. Nonetheless, we will still consider whether the allegations state a cause of action for another type of fraud—fraud in the execution—because our role is to assess the sufficiency of the pleading based on "the *facts alleged*, not the name given by the pleader to the cause of action." (*Ananda Church of Self-Realization v. Massachusetts Bay Ins. Co.* (2002) 95 Cal.App.4th 1273, 1281; accord *Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 139, fn. 2.)

14

his act, and actually does not know what he is signing, or does not intend to enter into a contract at all[.]" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415 (*Rosenthal*).) Where there is fraud in the execution, "mutual assent is lacking, and [the contract] is *void*." (*Ibid.*; see also Rest.2d Contracts, § 163 ["If, because of a misrepresentation as to the character or essential terms of a proposed contract, a party does not know or have reasonable opportunity to know of its character or essential terms, then he neither knows nor has reason to know that the other party may infer from his conduct that he assents to that contract. In such a case there is no effective manifestation of assent and no contract at all."].)

Fraud in the execution most often arises where some limitation—such as blindness, illness, or illiteracy—prevents a party from reading or understanding a contract he or she is about to sign. (See, e.g., *Rosenthal, supra,* 14 Cal.4th at pp. 427–428 [defendants failed to disclose parts of contract when reading it aloud to plaintiff, who was elderly and could not read English]; *Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 686–690 (*Ramos*) [defendants presented Spanish-speaking plaintiff with agreement in Spanish and then had him execute English version of agreement with different terms]; *Jones v. Adams Financial Services* (1999) 71 Cal.App.4th 831, 835–850 (*Jones*) [defendants tricked elderly, legally-blind woman into taking out a reverse mortgage by telling her she was merely signing paperwork to find out payoff schedule for her existing mortgage]; *Erickson v. Bohne* (1955) 130 Cal.App.2d 553, 554–557 (*Erickson*) [plaintiff's daughter took advantage of her physical and mental illness by tricking her into signing deed]; see also Black's Law Dict. (11th ed. 2019) Fraud in the Factum ["fraud in the factum occurs only rarely, as when a blind person signs a mortgage when misleadingly told that the paper is just a letter"].)

15

Fraud in the execution can also arise in cases like the present one, where the parties reach consensus on the material terms of an agreement, but one side surreptitiously swaps or modifies the agreement memorializing the terms without the other side's knowledge. (See *Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 764 (*Hotels Nevada*) [parties to real estate deal agreed buyer would give seller interest-free loan payable in one year, but buyer secretly changed loan term to five years]; *Hetchkop v. Woodlawn at Grassmere, Inc.* (2d Cir. 1997) 116 F.3d 28, 33 [employee representative secretly substituted one labor agreement for another agreement while employer's agent had his back turned]; see also Rest.2d Contracts, § 163, ills. 2 ["A and B reach an understanding that they will execute a written contract containing terms on which they have agreed. It is properly prepared and is read by B, but A substitutes a writing containing essential terms that are different from those agreed upon and thereby induces B to sign it in the belief that it is the one he has read. B's apparent manifestation of assent is not effective" due to fraud in the execution].).

As a procedural matter, parties usually invoke fraud in the execution as a defense to the enforcement of an ostensible contract—for example, to oppose the enforcement of an arbitration agreement. (See *Rosenthal, supra*, 14 Cal.4th at pp. 414–417; *Ramos, supra*, 242 Cal.App.4th at pp. 685–690; *Hotels Nevada, supra*, 144 Cal.App.4th at p. 764.) Or, in some cases, they invoke the doctrine while seeking rescission of a contract or a judicial declaration that the contract is void for lack of mutual assent. (*Jones, supra*, 71 Cal.App.4th at p. 833; *Erickson, supra*, 130 Cal.App.2d at pp. 554–557.)

This case does not fall neatly into either of these categories. True, Munoz seeks recission or reformation of the September 13 lease. However, he prays for these remedies in connection with a fraud cause of action that

16

seeks, as an alternative remedy, monetary damages. Despite the somewhat unusual procedural posture presented here, we see no reason why Munoz's seventh cause of action cannot be based on a fraud in the execution theory— at least so long as he alleges and ultimately proves the essential elements of a traditional cause of action for fraud. (See *Brockway v. Heilman* (1967) 250 Cal.App.2d 807, 811 ["Without question, the allegations of fraud in the inception and fraudulent failure to perform state a cause of action for fraud."]; accord *Anderson v. Ashby* (Ala. 2003) 873 So.2d 168, 183 [" 'Fraud in the factum is a traditional fraud' "].) Those essential elements are, of course, " ' "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." ' " (*Belasco v. Wells* (2015) 234 Cal.App.4th 409, 424.)

Reading the allegations of the operative complaint in the light most favorable to Munoz (see *Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1557), we conclude he has alleged facts sufficient to state a fraud in the execution cause of action against Rajesh. The seventh cause of action begins by incorporating the prior 184 paragraphs. This encompasses paragraphs 1, 9, 14 (including footnote 4), 15, 53, 88, and 121, which allege that *both* of the Patels, either acting directly or through their agents: (1) misleadingly implied that the July 17 lease was the final lease; (2) secretly substituted the September 13 lease for the July 17 lease; and (3) committed fraud in the execution.

In particular, those paragraphs allege as follows:

- *Paragraph 1*: "This Complaint deals with a complex plan perpetrated by a father and son team, Shivam Patel, ('SHIVAM') and Rajesh T. Patel ('RAJESH') through their alter-ego corporate entities, to induce [Munoz] to enter into a real estate sale/leaseback. ... The plan was designed to induce [Munoz] to enter into a purchase/leaseback

17

transaction due [*sic*] a unilateral mistake of fact about which PL, SHIVAM and RAJESH knew and/or caused ….”

- *Paragraph 9*: “SELLING DEFENDANTS[8] drafted and circulated an 'absolute NNN lease' which was confirmed as the final lease at least four times … by SELLING DEFENDANTS and their agents ….  [T]he parties had confirmed it as the final lease at least four times.”  (Bolding omitted.)

- *Paragraph 14*: “The parties had negotiated a leaseback in which the defendant sellers were responsible for all renovation costs and operational expenses for the Hotel, but, Defendants SHIVAM and RAJESH switched those terms out, and ... through trickery and substitution of an altered version of the lease ('the September 13 Lease') after the close of escrow ... [Munoz] mistakenly signed a lease that allegedly made [Munoz] responsible for the renovation costs and operating expenses .... The fraudulent substitution of the altered lease is … fraud in the execution which renders the signed September 17 Lease void.”  (Italics omitted.)

- *Paragraph 15*: “SELLING DEFENDANTS … never intended to enter into the leaseback that was negotiated, but instead always intended to change the terms by deceit.”

- *Paragraph 53*: “SHIVAM and RAJESH … planned to surreptitiously switch the terms of the lease just prior to execution of the lease without notice, so that the buyer/lessor would unknowingly accept adverse terms that were not bargained-for or agreed-to.”

- *Paragraph 80*: “[O]n July 17, 2018, a proposed but unexecuted form of the lease was sent from DAVIS to CASSIDY [Munoz's agent]…. [T]he July 17 Lease agreement was circulated multiple times without change by [Davis] … on behalf of Selling Parties.”

- *Paragraph 88*: “Shivam fraudulently and deceitfully changed the agreed July 13 Lease such that it was no longer the same agreement and intentionally deceived [Munoz] into executing the document thereby committing fraud in the execution ....”

---

8    The operative complaint defines “Selling Defendants” as Shivam, Rajesh, PL, and Inn Lending.

- *Paragraph 121*: "Selling Parties always intended to surreptitiously alter the lease knowing that the real estate agents would cooperate and/or would not be diligent enough to catch the fraud."

If we accept these factual allegations as true, as we must when assessing the sufficiency of a pleading at the demurrer stage, they establish that Rajesh (one of the Selling Defendants) drafted the July 17 lease; Rajesh (acting through his agent, Davis) circulated the July 17 lease; Rajesh (again, acting through his agent, Davis) confirmed that the July 17 lease would be the lease signed at close; and Rajesh (together with Shivam) swapped the September 13 lease for the July 17 lease without disclosing the swapped leases to Munoz. Further, the allegations, accepted as true for purposes of the demurrer proceedings, establish that he engaged in this conduct with the intent to induce Munoz to unknowingly execute the September 13 lease. This is precisely the type of conduct that can constitute fraud in the execution.

The question remains whether Munoz has alleged reasonable reliance based on his execution of the September 13 lease. We believe he has. "Generally, it is *not reasonable* to fail to read a contract; this is true even if the plaintiff relied on the defendant's assertion that it was not necessary to read the contract. [Citation.] Reasonable diligence requires a party to read a contract before signing it." (*Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 959; see also *Rosenthal, supra*, 14 Cal.4th at pp. 423–424.)

However, a party's failure to read a contract does not necessarily negate reasonable reliance where, as here, an allegedly defrauded party seeks equitable remedies such as reformation of the subject contract. (See *Security-First National Bank v. Earp* (1942) 19 Cal.2d 774, 777 ["It is established in California and a majority of other jurisdictions that the person who has been induced to enter into a contract by fraudulent misrepresentations as to its contents may rescind or reform the contract.

19

[Citations.] His negligence in failing to read the contract does not bar his right to relief [citations] if he was justified in relying upon the representations."]; *California Trust Co. v. Cohn* (1932) 214 Cal. 619, 627 ["where the failure to familiarize one's self with the contents of a written contract prior to its execution is traceable solely to carelessness or negligence, reformation as a rule should be denied; but that where such failure, and perhaps negligence, is induced … by the false representations and fraud of the other party to the contract that its provisions are different from those set out, the courts, even in the absence of a fiduciary or confidential relationship between the parties, should reform, and in most cases have reformed, the instrument so as to cause it to speak the true agreement of the parties"].)

Munoz alleges facts sufficient to establish reasonable reliance, despite his failure to read the September 13 lease. In particular, he alleges: (1) he is 80 years old, Spanish is his primary language, and he is "not proficient" in reading English, the language in which the lease is written; (2) he has never purchased a hotel before, let alone as part of a sale/leaseback arrangement; (3) the July 17 lease was circulated and confirmed as "the final lease at least four times," with the last confirmation coming "just days before the close of escrow"; (4) Munoz "reviewed and approved the July 17 Lease"; (5) the email attaching the July 17 lease only reserved PL's right to "make further edits in case there was an error or oversight," and no one associated with PL ever claimed there was an error or oversight; (6) in his email attaching the September 13 lease, Shivam did not disclose that he and Rajesh had swapped the leases; and (7) the differences between the leases were "not so numerous to be obvious" to the naked eye. These allegations plead adequate facts to satisfy the element of reasonable reliance.

20

In their supplemental brief, Rajesh and Inn Lending argue we should affirm the demurrer ruling because fraud in the execution can only be alleged against a party to the contract that the promisor was misled or tricked into executing. Applying this supposed requirement, they claim Munoz has not alleged fraud in the execution against them because they were not parties to the September 13 lease—only PL was.

However, Rajesh and Inn Lending cite no relevant authorities to support their argument that fraud in the execution can only be asserted against other contracting parties. In fact, the authorities suggest otherwise. (See *Erickson, supra*, 130 Cal.App.2d at pp. 554–557 [plaintiff stated cause of action against third-party purchaser of plaintiff's property based on fraud in the execution, even though purchaser was not a party to the contract plaintiff was tricked into executing].) Further, we see no persuasive reason for engrafting such a limitation onto a fraud in the execution claim. " 'In pursuing a valid fraud action, a plaintiff advances the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future.' " (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 992.) These policies are just as significant, and equally applicable, when it is a nonparty to a contract that has deceived an unwitting victim into executing an agreement whilst unaware of the very nature of his or her act.

Rajesh and Inn Lending also argue we should affirm the demurrer ruling because Munoz failed to discuss fraud in the execution in his opening appellate briefs. We can quickly dispose of this argument. At the Supreme Court's instruction, we ordered the parties to "file supplemental briefs on whether the operative complaint states a cause of action for fraud in the execution." Our supplemental briefing order permits us to rule on the

21

sufficiency of Munoz's fraud in the execution allegations, irrespective of whether he briefed the issue initially. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 84–85 ["To the extent [plaintiff] suggests the issue was waived on appeal because it was not tendered in the initial opening briefs, such procedural point is bootless in light of our order directing supplemental briefing to address the new factors."]; *San Joaquin Raptor/Wildlife Rescue Center v. County of Stanislaus* (1994) 27 Cal.App.4th 713, 741, fn. 12 ["This issue was not raised by appellants. However, '[a]n appellate court has the power to raise issues on its own motion.' "].)

For the reasons stated above, we conclude Munoz alleges facts sufficient to state a fraud in the execution cause of action based on Rajesh's substitution of the leases and his related concealment of the swapped leases. Because he alleges a valid fraud cause of action, the trial court erred in sustaining the demurrer to the seventh cause of action against Rajesh.[9]

2

*The Operative Complaint Does Not State a Fraud Claim Against Inn Lending*

Although Munoz has established that the trial court erred in sustaining the demurrer to his seventh cause of action against Rajesh, we cannot say the same with regard to his seventh cause of action against Inn Lending.

As noted, Munoz alleges fraud based on at least three categories of misrepresentations. However, Inn Lending did not exist as an entity when any of the alleged misrepresentations were made. Inn Lending was not

---

[9] " 'Ordinarily, a general demurrer does not lie as to a portion of a cause of action and if any part of a cause of action, is properly pleaded, the demurrer will be overruled.' " (*Elder v. Pacific Bell Telephone Co.* (2012) 205 Cal.App.4th 841, 856, fn. 14.) Thus, we do not consider whether the demurrer should have been overruled based on any of the other categories of misrepresentations alleged in the operative complaint.

organized until August 23—after the Hotel offering memorandum was circulated, after Munoz was told the July 17 Lease was the final lease, after the leases were swapped, and after Munoz received the letter of intent for the loan.  Because Inn Lending did not exist until after the alleged misrepresentations were made, we discern no error in the trial court's ruling that Munoz failed to plead a fraud cause of action against Inn Lending.  (See 1A Fletcher Cyc. Corp. (Sept. 2021) Torts by and against promoters, § 218 (Fletcher) ["A corporation is not liable for torts that its promoters committed before it came into existence."]; see also, e.g., *Alkanani v. Aegis Defense Services, LLC* (D.D.C. Sept. 16, 2013) 976 F.Supp.2d 1, 8 [an "LLC cannot be held liable for injuries that occurred prior to its corporate existence"].)

There are some limited circumstances in which a company can be held liable for torts committed by its agents before the company comes into existence.  (Fletcher, *supra*, § 218.)  However, Munoz presents no argument that this is such a case.  Nor does he identify any alleged misrepresentations that Inn Lending or its agents made *after* Inn Lending came into existence on August 23.  In fact, Munoz does not present any cogent argument, supported by citations to the appellate record and relevant legal authorities, concerning the sufficiency of his allegations against Inn Lending.  Therefore, Munoz has failed to carry his burden of establishing that the trial court erred when it dismissed the fraud cause of action against Inn Lending.

## D

### *The Court Erroneously Dismissed the Financial Elder Abuse Claim*

Munoz's third cause of action alleges the demurring parties violated the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600, et seq.; hereafter, the Act).  In particular, it alleges they committed financial elder abuse in violation of Welfare and Institutions Code

23

section 15610.30. Further, it alleges Munoz is entitled to remedies under Welfare and Institutions Code section 15657.6, which governs the return of property taken from elders who lack capacity or are of unsound mind.

The trial court sustained the demurrer to the financial elder abuse cause of action on the basis that the operative complaint did not allege "that Inn Lending or Rajesh Patel took, or assisted in taking, plaintiff Munoz's property for a 'wrongful use.' " Further, it found the complaint did not allege that Munoz " 'lacks capacity' or is of an 'unsound mind' pursuant to [Welfare and Institutions Code] section 15657.6."

We agree with the trial court that the operative complaint does not allege that Luis Munoz lacked capacity or was of unsound mind during the period described in the complaint. Indeed, Munoz does not contend otherwise. In the absence of such factual allegations, the complaint does not establish that the demurring parties had a duty to return property to Munoz under Welfare and Institutions Code section 15657.6.

However, that determination does not end our inquiry into whether Munoz alleges a violation of the Act. As noted, the third cause of action does not merely seek a return of property under Welfare and Institutions Code section 15657.6. It also alleges the demurring parties committed financial elder abuse under Welfare and Institutions Code section 15610.30. A financial elder abuse claim lies when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or

24

dependent adult for a wrongful use or with intent to defraud, or both," or assists in such conduct.[10] (Welf. & Inst. Code, § 15610.30, subd. (a)(1), (2).)

Under these standards, the operative complaint pleads facts sufficient to state a financial elder abuse cause of action. It alleges Munoz is 80 years old and a resident of Los Angeles. Thus, it alleges he is an "elder" for purposes of the Act. (Welf. & Inst. Code, § 15610.27 [" 'Elder' means any person residing in this state, 65 years of age or older."].) The complaint also alleges the demurring parties received Munoz's property. Paragraph 153—which is located under the heading for the financial elder abuse cause of action—incorporates the previous 152 paragraphs. This includes paragraphs 46, 47, and 148, which allege the proceeds from the Hotel sale were transferred "to RAJESH and/or INN immediately after the close of the escrow."

Paragraph 153 also incorporates paragraphs alleging that the demurring parties received Munoz's property for a wrongful use and/or with fraudulent intent. It incorporates paragraphs 11 and 123, which allege Rajesh and Inn Lending were aware of, and complicit in, the plan to inflate the Hotel's purchase price through false promises of a triple-net lease. Further, it incorporates all the previously-discussed allegations of fraud in the execution, the lease swap, the alter ego relationship between the Patels and Inn Lending, and the concealment of this relationship. Collectively, these factual allegations, which we accept as true, are sufficient to establish

---

10    Wrongful intent exists when a person or entity "takes, secretes, appropriates, obtains, or retains the [elder or dependent adult's] property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." (Welf. & Inst. Code, § 15610.30, subd. (b).)

25

that the demurring parties obtained the property of an elder for a wrongful use and/or with the intent to defraud.

Because the operative complaint alleges that the demurring parties obtained the property of an elder for a wrongful purpose, or with fraudulent intent, it alleges facts sufficient to state a financial elder abuse cause of action. In concluding otherwise, the trial court erred.[11]

IV

DISPOSITION

The judgment of dismissal is reversed. The matter is remanded with instructions that the trial court vacate its order sustaining the demurrer to the entire complaint and enter a new order: (1) sustaining without leave to amend the demurrer to the first cause of action for breach of contract and the eighth cause of action for bad faith; (2) overruling the demurrer to the third cause of action for financial elder abuse; (3) sustaining without leave to amend the demurrer to the seventh cause of action for fraud against Inn

---

[11] In their appellate brief, Rajesh and Inn Lending state in passing that LRM Holdings "is an entity, not subject to the [Act]." However, they do not explain the relevance of this assertion. They also do not contend that LRM Holdings falls outside the statutory definition of an "interested person" entitled to assert a cause of action for violations of the Act. (See Welf. & Inst. Code, § 15600, subd. (j).) Therefore, we deem as waived any argument based on LRM Holdings' entity status, and we render no opinion on whether LRM Holdings has standing to sue for violations of the Act.

Lending; and (4) overruling the demurrer to the seventh cause of action for fraud against Rajesh.  Each party shall bear its own costs on appeal.


McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

O'ROURKE, J.